THE STATE OF OHIO, DEPT. OF TAXATION, APPELLEE, *v.*
JONES ET AL., APPELLEES; CLEVELAND FEDERAL SAVINGS
& LOAN ASSN., APPELLANT.

[Cite as State v. Jones (1980), 61 Ohio St. 2d   99.]

(No. 79-273—Decided January 23, 1980.)

*Michael L. Thal Co., L.P.A.,* and *Mr. Michael L. Thal,* for appellee Ohio Dept. of Taxation.

*Mr. Eric R. Jenson,* for appellees.

*Messrs. Wochna, Fallon & Iler* and *Mr. Charles T. Wochna,* for appellant.

*Per Curiam.*

## I.

Appellant, in its first proposition of law, essentially asserts that the doctrine of subrogation should allow its claim to have priority over the undiscovered but properly recorded claim of the state.

In a broad sense, one person is subrogated to certain rights of another person where he is substituted in the place

of such other person so that he succeeds to those rights of the other person. *Aetna Cas. & Sur. Co.* v. *Hensgen* (1970), 22 Ohio St. 2d 83.

The doctrine of subrogation incorporates both conventional subrogation and legal (or equitable) subrogation. Conventional subrogation is premised on the contractual obligations of the parties, either express or implied. The focus of conventional subrogation is the agreement of the parties which must, in essence, allow the payor-creditor to be substituted for the creditor who is being discharged by the payor's loan.

The trial court, in its judgment entry, declared that "there is no evidence tending to support any claims that Cleveland Federal expressly intended to be subrogated to the rights of the three prior lienholders at the time said liens were discharged."

In addition to the foregoing, the appellees' loan application disclosed that the purpose of the refinancing was "to go into business[;] sales/servicing."

Furthermore, Albert Herman, an officer of the appellant, testified that the various debts had been satisfied in January 1977 in order to extinguish the liens. There is no express or implied mention of appellant's obtaining the priority of the claims discharged.

The thrust of the agreement was to extinguish the liens. Accordingly, we affirm the judgment of the Court of Appeals denying the application of the doctrine of conventional subrogation in the instant cause.

Appellant asserts that Ohio case law provides that an oversight or misrepresentation should not deny a creditor subrogation. Appellant cites *Straman* v. *Rechtine* (1898), 58 Ohio St. 443, and *Union Trust Co.* v. *Lessovitz* (1931), 51 Ohio App. 69, as allowing subrogation in similar instances. However, in both cases, conventional subrogation is discussed, but not legal (equitable) subrogation. In both cases, a clear agreement had been shown for the payor to obtain a first and best lien priority.* As noted previously, the facts in the in-

---

* In *Straman, supra,* the defendant went to great lengths in order to make sure that the agreement was clear as to the intention of the parties so that the defendant would obtain a first and best lien. The court noted, at page 453, the agreement to obtain the first and best lien when it stated:

stant cause do not support the application of the doctrine of conventional subrogation, since there is no clear evidence of an express or implied agreement to have the appellant subrogated.

Legal subrogation, as distinguished from conventional subrogation, "* * * arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." *Federal Union Life Ins. Co.* v. *Deitsch* (1934), 127 Ohio St. 505, 510.

In *Canton Morris Plan Bank* v. *Most* (1932), 44 Ohio App. 180, the court, commenting on the doctrine of subrogation, stated, at page 184:

"We choose first to remark that equity in the granting of relief by subrogation is largely concerned with and rests its interference, when called upon, on the prevention of frauds and relief against mistakes, and it is correctly stated that the right to it depends upon the facts and circumstances of each particular case. * * *"

In order to entitle one to subrogation, his equity must be strong and his case clear. *Harshman* v. *Harshman* (1941), 35 Ohio Law Abs. 633, 636, 42 N.E. 2d 447. In the instant cause appellant does not clearly show that the equities mandate subrogation.

A review of the facts reveals that the appellant's own actions led to its dilemma of not obtaining the best priority lien. Appellant was in complete control of the refinancing application, and, yet, by appellant's own actions and inactions, the

---

"* * * Ferdinand Rechtine thereupon requested Mr. Brunning to loan him $1,600 with which to pay off the insurance company's mortgage, and *agreed* to give Mr. Brunning a first mortgage on the same lands to secure the loan, and assured him that all of his father's debts had been paid, and that there was no other lien upon the lands, except the mortgage to Mrs. Moe for $500.00, and he *agreed* to obtain a release of that mortgage so that the mortgage to Mr. Brunning should be the first and best lien. Mr. Brunning agreed to these terms, and made the loan of $1,600 to Ferdinand Rechtine, and the mortgage to the insurance company was paid off with the money, and was released of record. A mortgage for the $1,600 was then made by Ferdinand Rechtine to Mr. Brunning on the same lands, and was duly recorded, the mortgage to Mrs. Moe being released of record, so that Mr. Brunning as he understood and believed had the first lien on the lands."

state, without acting fraudulently, was able to secure priority of its claim by its filing on October 19, 1976.

Appellant controlled the disbursement of the funds, the filling out of all the forms, the date of the filing and even the hiring of the title company.

The appellant expressly told the title company not to file the second mortgage until instructed to do so, which was on December 29, 1976, approximately three months from the date of execution of the second mortgage. Fred C. Jones, title officer of Midland, indicated by his testimony that it is not usual to hold a mortgage "for this length of time."

Additionally, appellant went ahead and imprudently cancelled its own first mortgage in the amount of $31,500 in January 1977 without first having received any title guarantee from Midland, which title company was hired by the appellant.

Fred C. Jones testified further that the normal procedure is to allow the title company to cancel existing debts.

Appellant was made aware of the appellees' unusual debts to the accounting firm and also the Internal Revenue Service claim, but did nothing to inquire further as to any additional obligations.

After a series of improvident business maneuvers, appellant now asserts that the equitable action of subrogation should allow its claim to have priority over the state's properly filed claim. This court will not invoke the equitable doctrine of subrogation under these circumstances.

In a similar factual setting, the Iowa Supreme Court, in *Ft. Dodge Building & Loan Assn.* v. *Scott* (1892), 86 Iowa 431, 53 N.W. 283, denied subrogation. In the *Ft. Dodge* case, the plaintiff loaned money to a certain individual, which would allow that individual to pay off prior mortgages. Plaintiff intended to establish its lien as the first and best lien when it made the loan. The abstract of title was not updated, and, before the plaintiff filed its lien, an intervening judgment lien was recorded. The court, in *Ft. Dodge,* commenting upon the delay in filing, stated, at pages 434-435:

"***The position of the plaintiff is the result of its own negligence. It relied upon an abstract of title which was not brought up to date, and which failed to note the pendency of

this defendant's action, or the judgment in his favor. An examination of the court records of the county on the day the loan was made would have informed plaintiff of the existence of this judgment, and that it was a lien upon these lots, whether owned by both or either of the Baehrings. Without making this examination, which the most ordinary care required, plaintiff made the loan, and accepted its mortgage. Surely equity will not reward such negligence by applying the doctrine of subrogation in favor of the negligent party. To do so would encourage carelessness in taking such securities***."

Reviewing the totality of the circumstances in this cause, this court finds that the trial court did not commit error in denying the appellant the right to subrogation and its appropriate remedy, and we affirm the Court of Appeals which so held.

## II.

Appellant, in its second proposition of law, asserts that homestead exemptions do not have priority over judgments rendered on a mortgage upon the sale of the subject premises.

This court affirms the Court of Appeals' decision that a homestead exemption, as described in (former) R. C. 2329.73, is applicable to the appellees as against the lien of the state of Ohio in the instant cause. Acknowledging the limitations of R. C. 2329.73 by the restrictions imposed by (former) R. C. 2329.72 the facts at bar allow the homestead exemption to be taken by the appellees.

Based on the foregoing, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, C. J., and HOLMES, J., dissent.

HOLMES, J., dissenting. I must disagree with the majority as to the holding that the principle of equitable subrogation could not be applied here to the payments made by Cleveland Federal to other lienholders.

I agree that this court may not reweigh the evidence, as determined by the trial court and affirmed by the Court of Appeals and hold that there was subrogation by contract. However, in my view, the doctrine of equitable subrogation should be applied here, at least to the lien debts of the IRS and Frank, Seringer & Chaney, C.P.A.'s.

I do not believe that equitable subrogation may be applied in the instance of Cleveland Federal having satisfied its own prior secured debt with the proceeds of the latter secured loan. The doctrine of subrogation in its broadest sense is the substitution of one person for another with reference to a lawful claim or right, or the substitution of another person in the place of the creditor to whose rights he succeeds. *Aetna Cas. & Sur. Co.* v. *Hensgen* (1970), 22 Ohio St. 2d 83; 50 Ohio Jurisprudence 2d 376, Subrogation, Section 2. Here, it is my position that Cleveland Federal may not be subrogated to its own original rights. For purposes of subrogation, it may stand in the shoes of others, but not in its own original shoes.

The general rule as to equitable subrogation is that "one who advances money to pay a prior lien, without discovering an intervening lien which a proper examination of the records would have disclosed, is not guilty of such negligence as will prevent his being subrogated to the prior lien as against the intervening lienor, especially where subrogation leaves the latter no worse off than he would have been had the prior lien not been paid." 73 American Jurisprudence 2d 664, Subrogation, Section 104.

Equitable subrogation is applied in order to prevent unjust enrichment. It is my position that the state will be unjustly enriched if it is given priority over Cleveland Federal as to the two liens of the other creditors. But for the fact that Cleveland Federal discharged the liens of the IRS and the accounting firm, the state of Ohio would have a lien subject to these prior liens.

Although Cleveland Federal or its agent, Midland, or both, were negligent in conducting the title searches, I do not believe that this would be the basis here for denying equitable intervention.

Further, I would hold that the appellees Jones are not entitled to a homestead exemption as against Cleveland

Federal. R. C. 2329.72 (now 2329.661) specifically provided that the homestead exemption did not apply to a mortgage judgment executed by a debtor.

Accordingly, I would reverse in part, and modify in part, the judgment of the Court of Appeals.

CELEBREZZE, C. J., concurs in the foregoing dissenting opinion.