**Federal Home Loan Mortgage Corp.
v. Moore**
*[Cite as 7 AOA 408]*

*Case No. 90AP-546*
*Franklin County, (10th)*
*Decided September 27, 1990*

Austin P. Wildman and Thomas J. Conkle, Hamilton, Kramer, Myers & Cheek; James W. Wheeler, Teaford, Rich, Belskis, Coffman & Wheeler, for Appellant.

Michael N. Schaeffer and Christopher L. Lardiere, Kemp, Schaeffer & Rowe, for Appellee Fifth Third Bank.

Lee C. Mittman, for Appellees Thomas and Judith Moore,

D. Michael Crites, U.S. Attorney, and Randall E. Yontz, for USA.

McCORMAC, J.

Plaintiff-appellant, Federal Home Loan Mortgage Corporation, as assignee of a mortgage to Diamond Savings & Loan Association, appeals the judgment of the Franklin County Court of Common Pleas that defendant-appellee, Fifth Third Bank of Columbus, held the first and best mortgage on property subject to a foreclosure action. Appellant's two assignments of error are as follows:

"I. THE TRIAL COURT ERRED IN LABELING DIAMOND'S MISTAKE AS NEGLIGENCE AND THEN BALANCING THE ALLEGED NEGLIGENCE AGAINST FIFTH THIRD'S UNJUST ENRICHMENT. EQUITABLE SUBROGATION PROVIDES RELIEF FROM MISTAKES AND FRAUD, AND OPERATES TO PREVENT UNJUST ENRICHMENT. MISSING A MORTGAGE IS NOT SUCH NEGLIGENCE AS WILL PREVENT SUBROGATION TO A PRIOR LIEN, ESPECIALLY WHERE SUBROGATION LEAVES THE INTERVENING LIENHOLDER NO WORSE OFF.

"II. THE TRIAL COURT ERRED IN CONSIDERING THE EXISTENCE OF A TITLE INSURANCE POLICY IN REACHING ITS DECISION. INSURANCE IS COLLATERAL TO THE ISSUE OF EQUITABLE SUBROGATION. NEITHER THE EXISTENCE OF TITLE INSURANCE, NOR THE PASSIVE ROLE OF FIFTH THIRD JUSTIFIES FIFTH THIRD'S UNJUST ENRICHMENT AND UNCONSCIONABLE RETENTION OF THE SALE PROCEEDS."

In June 1986, Thomas and Judith Moore decided to refinance several existing mortgages on their residence at 4370 Harborough Road, Upper Arlington, Ohio. At the time, the Moores had personal first mortgages on the property to Railroad Savings & Loan, later Diamond Savings & Loan, in the amount of $105,000. Mr. Moore, a partner in ATF Sheet Metal, Inc, also executed a second partnership mortgage on his residence to Bank One in the amount of $700,000.

The partners of ATF agreed to refinance partnership obligations to Bank One with Fifth Third Bank by giving Fifth Third second and third mortgages on their residences. Hence, on July 13, 1986, the Moores executed and delivered a third mortgage on the residence property to secure a $750,000 business loan. The mortgage was subsequently filed on July 16, 1986. There is no question that Fifth Third was aware of Diamond's first mortgage and that Fifth Third expected that their mortgage on Moore's residence would be second or third in time.

The Moores refinanced their personal loans with Diamond on June 20, 1986. The terms of the refinancing mortgage agreement between Diamond and the Moores were that the Moores would receive a $125,000 personal loan, a portion of which would be used to pay off the prior liens on the residence property so that Diamond would acquire a first mortgage lien on the same property. Diamond, however, was unaware of the loan to the Moores from Fifth Third because Mr. Moore stated in his affidavit to Diamond on June 20, 1988 that he had no knowledge of it. Furthermore, title searchers for Title First, Inc., the title insurance company employed by Diamond, mistakenly missed the mortgage from the Moores to Fifth Third during their search on June 18, 1986.

Diamond recorded the Moore's mortgage on June 30, 1986. Consequently, when Diamond released its previous mortgages on August 5, 1986 pursuant to its refinancing agreement with the Moores, Fifth Third unexpectedly became the holder of a lien recorded first in time.

Both the Moores and ATF were non-performing on their different obligations and a dispute arose as to the priority of liens. The trial court, on April 27, 1990, denied appellant its requested remedy of equitable subrogation and ruled that Fifth Third had first lien position. Thereafter, the property was sold at a

sheriff's sale and Fifth Third was paid the proceeds of the sale.

Appellant's assignments of error will be discussed together.

"Subrogation," in its broadest sense, is the substitution of one person in the place of another with reference to a lawful claim or right. *Federal Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, at 510. The doctrine of subrogation incorporates both conventional subrogation and legal (or equitable) subrogation. *State v. Jones* (1980), 61 Ohio St. 2d 99, at 101. Conventional subrogation is premised on the contractual obligations of the parties, either expressed or implied. *Id.* The focus of conventional subrogation is the agreement of the parties. Equitable subrogation arises only by operation of law when one having a liability or right or a fiduciary relation in the property pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor who he has paid. *Deitsch, supra,* at 510.

The record in the instant case indicates that Diamond expressly intended, at the time it discharged the first and second mortgages on the Moore's residence, to be subrogated to the rights it had under them. The sole purpose of the refinancing agreement between appellant and Diamond was for appellant to obtain a lower interest rate on his personal residence mortgage. Appellant and Diamond, therefore, agreed that the proceeds of Diamond's loan to the Moores would pay off the prior liens so that Diamond would maintain a first mortgage lien on the same property. Conventional subrogation does not apply to defeat a third-party's claim to a prior lien when the payor-creditor and the discharged creditor are the same when the third party is not bound by the agreement.

This case involves the doctrine of equitable subrogation because there was no agreement, express or implied, which contractually obligated the parties herein to subrogation.

Appellee relies heavily on the case of *State v. Jones, supra,* in which the court refused to apply the doctrine of equitable subrogation when the negligence of the lender's agent in failing to discover a prior recorded state tax lien caused the lender to be unexpectedly denied first priority position. In that case, there was an intentional three-month delay from the date the second mortgage was executed to the date of filing. During the three-month interim, the state, without acting fraudulently, filed its tax lien which was not discovered in the updated title search before the filing of the second mortgage. Hence, when prior lienholders released their mortgages, the state acquired a first lien position. The court determined that the negligence of the lender in failing to file its lien for three months, regardless of whether the updated title search was conducted after the filing of the tax lien, deprived the lender of the remedy of equitable subrogation.

The viability of the doctrine of equitable subrogation depends on the facts and circumstances of each case. *Id. Jones* is distinguishable from the instant case. Firstly, the court in *Jones* expressly refused to apply conventional subrogation because the thrust of the business loan to the debtor was to allow him to pay prior lien-holders, rather than to maintain the lender's first priority position. Secondly, Diamond's negligence, contrary to that of *Jones,* was not so material as to deprive it of equitable subrogation. Diamond filed its mortgage only six business days after its execution. There was no inexcusable negligence in the form of a conscious and lengthy delay in filing, but only an ordinary mistake by Diamond's agent during its title search. Finally and importantly, any negligence by Title First was immaterial because no one was misled or injured thereby. In fact, Fifth Third expected to be inferior in priority to appellant's lien. No one changed their position in reliance on the mistake, and there was no prejudice to subsequent intervening rights which could cause a court to regard Title First's negligence as significant. Fifth Third did not bargain for or even expect a first lien position and their advancement to first priority caused Fifth Third to receive an unearned windfall. Hence, appellant has clearly proved that their equity is strong and clear, mandating the application of the doctrine of equitable subrogation.

Appellee also resists the application of equitable subrogation because appellant may have an action against Title First for its negligence in searching the real estate records.

Since Title First's negligence did not prejudice Fifth Third, the existence of a title insurance policy is irrelevant to whether appellant has a right of subrogation. This issue was confronted in *Union Trust Co. v. Lessovitz* (1931), 51 Ohio App. 69, at 73:

"*** It would be strange if a prospective mortgagee in employing the services of a title

company to search the records should thereby forfeit the right of subrogation which it would otherwise have. This would be to penalize the prudent and diligent, who are favored in all the other fields of equity. It would be tantamount to holding that a prospective purchaser for value employs a title company at his peril, because the negligence of the latter may utterly destroy such purchaser's right. ***"

Title First's negligence does not bar appellant's right to equitable subrogation, regardless of any remedy appellant may have had against Title First.

Appellant's assignments of error are sustained. The judgment of the trial court is reversed and the case is remanded for further procedure consistent with this opinion.

*Judgment reversed and*
*case remanded.*

WHITESIDE and BRYANT, J.J., concur.