OPINION
In the following accelerated calendar appeal, submitted on the record and briefs of the parties, appellant, Robert Johnson ("Johnson" or " appellant"), appeals from a decision of the Lake County Court of Common Pleas granting summary judgment in favor of appellee, Progressive Insurance Co. ("Progressive" or "appellee"), in a declaratory judgement action. For the reasons that follow, we reverse the judgment of the trial court, and remand for further proceedings consistent with this opinion.
The undisputed facts pertinent to this appeal are as follows. On April 19, 1997, Johnson was a passenger in a car operated by Glenn Deemer, III ("Deemer"). The car was involved in a collision with a vehicle operated by Donald Fallon ("Fallon"). On that date Deemer had in effect an insurance policy with Progressive, and Fallon was insured by the Central Insurance Company ("Central"). Fallon's vehicle rear-ended Deemer's vehicle. Johnson suffered injuries that required medical treatment and allegedly caused him to miss twelve weeks of work.
Under the terms of Progressive's policy with Deemer, Johnson, as a passenger in the insured vehicle, was an "insured person." Johnson's attorney contacted Progressive, and they acknowledged that Johnson would be entitled to up to $5,000 in medical payments coverage as a result of Deemer's policy. Counsel subsequently submitted medical bills to Progressive, and it then paid $5,000 to various medical caregivers between May 5, 1997 and July 21, 1997.
Because Progressive treated Johnson as an insured under its policy and made payments, Progressive operated on the assumption that Johnson was bound by the terms of its policy with Deemer. Johnson did not have any contractual agreements with Progressive prior to the accident, nor was a written agreement between the parties entered into after the accident. Progressive began making payments on May 5, 1997, but waited until September 12, 1997, to send written notice of their claimed subrogation rights to Johnson. Progressive placed Fallon's insurance company, Central, on notice of their claimed rights on June 6th and again on July 22, 1997. There is no evidence in the record that Johnson or his counsel were aware of Progressive's claimed right of subrogation prior to September 12, 1997.
On November 25, 1997, Johnson settled his claim with Central for $36,000. Central forwarded two checks to Johnson's attorney, one for $31,000 payable to Johnson, and one for $5,000 payable to Progressive. Johnson, through counsel, then filed his declaratory judgement action seeking payment of the entire $36,000 settlement to the exclusion of Progressive's claim.
Johnson filed a motion for summary judgement. Progressive responded to the motion and filed its own motion for summary judgement requesting payment of the $5,000, which Johnson was withholding. In his motion for summary judgement, Johnson argued that when Progressive paid the $5,000 they did so without any subrogation rights. Johnson pointed to the absence of an express contract or assignment of rights. Johnson also addressed the issue of whether or not Progressive could recover under the theory of equitable subrogation. The basis for the imposition of subrogation rights in equity is the concept of unjust enrichment. Johnson argues he was not fully compensated for his losses and therefore was not unjustly enriched.
In Progressive's response and motion for summary judgment, Progressive argued that the terms of its policy are valid, that they apply to Johnson, and that its rights are founded in the policy. It points out that Johnson failed to assert that he was not an insured when he requested the payment, and that when he accepted the benefits of the contract he obligated himself to the terms of the contract. Secondly, it argues that equitable subrogation rights would exist by operation of law and no express agreement is therefore required. It argued that retention of both the $5,000 and the $36,000 settlement would constitute double recovery for the medical expenses, thereby unjustly enriching Johnson. Progressive argues that because Johnson settled his claim as against Fallon/Central he should be precluded now from raising the issue of whether or not he is fully compensated. Progressive suggests if Johnson feels he is not fully compensated, he must repudiate the settlement and fully litigate the issue of damages at trial.
On April 8, 1998, the trial court's judgment entry denied Johnson's motion and granted Progressive's motion for summary judgment. The court found Johnson was an insured under Deemer's policy with Progressive. It found Progressive's rights to subrogation are permitted by both the policy and Ohio law. Additionally, the court held that because Johnson settled his case against Central, he was precluded from raising the issue of adequate compensation in this case. From this judgment, appellant filed a timely notice of appeal and now presents the following two assignments of error:
 "[1.] Can medical payments under the defendant-appellee, Progressive Insurance Company's, automobile insurance policy be subrogated to the insurer (Progressive) by a non-policyholder passenger who has received benefits towards his medical bills."
 "[2.] Is there such privity of contract requiring repayment where no written agreement existed between defendant appellee, Progressive Insurance Company, and the plaintiff-appellant, Robert T. Johnson."
Appellant's first assignment of error asserts the trial court erred in finding that Progressive was subrogated to the settlement Johnson received from Central because Johnson is not a policyholder of Progressive's, and the payments which Progressive made to Johnson's medical care-givers did not bind him to the terms of its contract with Deemer. His second assignment of error asserts the trial court erred in finding that a contract did exist and that this contract required Johnson to pay back the $5,000 which Progressive paid to the various medical care-givers. The two assignments of error are interrelated, accordingly we shall address the assignments together.
Civ.R. 56(C), providing the standard governing motions for summary judgment, states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morrisv. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
The Supreme Court of Ohio in Dresher v. Burt (1996), 75 Ohio St.3d 280, set forth the burden that is placed on each party when a motion for summary judgment is filed. The court held:
 "* * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293. (Emphasis sic.)
In order to affirm the court below, this court must find either that Johnson had a contract with Progressive, or that Progressive had an equitable right to subrogation and that, as a matter of law, Johnson's settlement with Central constitutes full compensation. We do not find either to be the case.
First we will address the issue of whether Johnson was bound under the terms of the policy. It is undisputed that Johnson was an insured person under the terms and definitions of Deemer's policy with Progressive. However, Johnson was a stranger to that contract. It was Deemer who entered the contract, and in the present analysis we do not consider that Deemer and Johnson are standing in the same shoes. It is clear from the record that no express agreement or contract ever existed between the parties. Consequently, the fact Johnson is an insured person under Progressive's policy does not resolve the issue. It does not matter what Progressive's policy says if no contract was formed between Johnson and Progressive binding both parties to its terms.
For purposes of the subrogation analysis, we draw a distinction between an insured policyholder (Deemer) and an insured person (Johnson). The policyholder made a contract with the insurer, whereas, as in this case, the insured person's relationship with the insurer exists by accident.
The Supreme Court discussed the different types of subrogation in Blue Cross Blue Shield Mut. of Ohio v. Hrenko
(1995), 72 Ohio St.3d 120, which states:
 "In Ohio, there are three distinct kinds of subrogation: legal, statutory, and conventional. Legal subrogation arises by operation of law and applies when one person is subrogated to certain rights of another so that the person is substituted in the place of the other and succeeds to the rights of the other person. State v. Jones (1980), 61 Ohio St.2d 99, 100-101, 15 O.O.3d 132,133, 399 N.E.2d 1215, 1216-1217. Statutory subrogation is a right that exists only against a wrongdoer. Conventional subrogation is premised on the contractual obligations of the parties, either express or implied. The focus of conventional subrogation is the agreement of the parties. Id.
at 101, 15 O.O.3d at 133, 399 N.E.2d at 1217." Id.
at 121.
If Progressive is entitled to subrogation under the policy, such a finding would be a conventional subrogation and, as such, must be based on an agreement between the parties. There is no question that subrogation is a valid legal principal, and that the Ohio Supreme Court approved of conventional subrogation of medical payments in Smith v. Travelers Ins. Co. (1977), 50 Ohio St.2d 43,45. The court reached its conclusion approving the subrogation of medical payments in Smith based on the "straightforward application of contract principles." Id. at 46. Mrs. Smith was a policyholder of Travelers Insurance. Her contract contained a subrogation agreement. After the accident, pursuant to the subrogation provision, Mrs. Smith executed a subrogation agreement prior to her filing a claim for her medical expenses with Travelers Insurance. The dispute arose when Mrs. Smith, after executing the subrogation agreement but prior to filing her claim with Travelers Insurance, independently settled her claim with the tortfeasor and signed a release. The court upheld Travelers Insurance Company's subrogation rights on the basis of the contract. Id.
In the present case, we find there was no agreement relevant to subrogation, express or implied. Johnson was a passenger who was injured while in a vehicle driven by a Progressive policyholder. There was neither a prior express contract nor a formal subrogation agreement executed after the accident but prior to any payments, as in Smith, supra. We will not imply a contract on the simple basis that Johnson requested payment of his medical bills for injuries he sustained in their policyholder's vehicle. Johnson also requested payments from Central. No contract existed between Central and Johnson. Central's contract was with Fallon, yet it resulted in payment to Johnson. Johnson ultimately signed a release with Central, but this was done contemporaneously with its payment and it was signed by the parties. The request for payment, standing alone, does not create a contract.
Unfortunately for Progressive, there is nothing in the record indicating any kind of agreement or negotiation related to subrogation prior to its payment of the medical expenses. Nor is there any evidence indicating Johnson was aware of Progressive's claimed rights prior to its tendering payments. When arguing it is entitled to subrogation under the policy, Progressive states that because Johnson asked for and accepted medical payments from Deemer's policy, he should be held to the responsibilities and obligations of that policy. This argument is more characteristic of legal (equitable) subrogation. It is one of fairness, and it underscores the absence of an agreement. In the absence of an agreement, we cannot conclude as a matter of law that Progressive is entitled to conventional subrogation under the policy.
Next we turn to the question of legal (equitable) subrogation. The trial court was correct in holding that subrogation of medical payments is permitted by Ohio law. This court has previously enforced medical payments subrogation under the doctrine of equitable subrogation. See Allstate Ins. Co. v.LaCivita (Aug. 9, 1996), Portage App. No. 94-P-0118, unreported. Specifically, this court adopted the rationale that "the equitable right of subrogation is the legal effect of payment, and inures to the insurer without any formal assignment or any express stipulation to that effect in the policy." Id. at 6, citing StateFarm Mut. Auto. Ins. Co. v. Scott (Dec. 20, 1993), Clinton App. No. CA93-05-013, unreported. We note, however, both LaCivita andScott were disputes between insured policyholders and their insurers, whereas the present case involves an insured person (third party) who did not have a prior underlying contract with the insurer.
In Smith, supra, the Supreme Court cited with approval the holding of Hartford Accident Co. v. Elliott (1972), 32 Ohio App.2d 281, wherein the court enforced an insurer's subrogation rights.Hartford has some similarity to the present case. In Hartford
the injured party was a passenger in a car driven by the insurance company's policyholder. The court premised its decision upon its finding there was a subrogation agreement between the injured passenger and the insurer, and this appears to be an instance of equitable subrogation. The insurer paid the medical expenses of the injured party prior to the injured party's settlement with the tortfeasor. The tortfeasor's insurance company settled directly with the injured party and thereafter refused to pay the subrogated medical claim of the insurer. The major distinction between Hartford and the present case is in Hartford the insurer sued the tortfeasor directly in an independent action, which the court approved. Id. at 282-283. In the present case the insurer is attempting to recover from the injured party. Assuming, arguendo, that we found equitable subrogation was appropriate in this case, the attempt to recover from the injured party raises the question of full compensation.
The trend, stemming from Hrenko, wherein the court states the insurer "may recover from the insured after the insured receives full compensation," is for the courts to review whether or not the injured party has been fully compensated before granting the insurer's claim priority. (Emphasis added) Hrenko, at the syllabus. On this basis, subrogation claims have been denied, or denied priority, in the Second, Fifth, and First appellate districts. See, Porter v. Tabern (Sept. 17, 1999), Champaign App. No. 98-CA-26, unreported; Central Reserve Life Ins. Co. v.Hartzell (Nov. 30, 1995), Tuscarawas App. No. 94AP120094, unreported; Moellman v. Niehaus (Feb. 5, 1999), Hamilton App. No. C-971113, unreported. This review cannot be done in a summary judgment if there are disputed questions of fact. The trial court adopted the view that by settling his claims Johnson was necessarily fully compensated. This is erroneous. Neither the court nor Progressive cite any authority which indicates a person who settles a claim with one party has, as a matter of law, been fully compensated. The settlement itself states that it is a compromise of a doubtful and disputed claim, and that it is offered for the sole purpose of avoiding further litigation by buying the peace. The settlement is a release of Central from further claims and litigation. It is not necessarily full compensation. What would constitute full compensation in this case is a disputed question of fact.
If we assume Progressive has equitable subrogation rights, in granting summary judgment, the trial court erred in precluding Johnson from raising the issue of full compensation in this action. By the same token, Johnson is not entitled to be compensated twice for the same injury. Whether or not he was fully compensated, and what he was compensated for, are questions of fact which were not resolved by the record before this court.
We form no ultimate conclusion as to whether or not Progressive is entitled to equitable subrogation rights, nor would we preclude the trial court from considering previously unproffered evidence, if any there be, of a contractual relationship supporting conventional subrogation rights. But under the facts before it, the finding of subrogation rights was inappropriate. Deciding whether it should be allowed in this case requires the weighing of evidence with respect to facts in dispute, whether of a contractual relationship or of the relevant equities between the parties. That was not done, nor could it be done in a summary judgment proceeding.
The judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
FORD, P.J., NADER, J., concur.