OPINION
Plaintiff-appellant Bank of New York appeals from the February 7, 2001, Judgment Entry of the Delaware County Court of Common Pleas which held that defendant-appellee Fifth Third Bank's lien had priority over that of plaintiff-appellant.
 STATEMENT OF THE FACTS AND CASE
On October 2, 1995, Dennis M. Laymon and Dorie A. Laymon executed a promissory note and open end mortgage (which is known as a home equity line or revolving credit line) in favor of appellee Fifth Third Bank in the amount of $74,000.00. The mortgage was secured by the Layman's house located at 6424 Lake Trail Drive in Westerville, Ohio.
Two years later, the Laymons decided to consolidate their loans through AAA Mortgage (now known as appellant Bank of New York). Express Title Services was the closing agent for the Laymon's refinance loan, which was in the amount of $402,000.00 secured by their home. Express Title Services, as the closing agent for the refinancing, requested a payoff statement from appellee Fifth Third Bank. In response, appellee Fifth Third Bank sent an "Equity Line Payoff Statement" to Express Title Services indicating that, as of January 30, 1997, the Laymons owed $77,088.65 in principal and interest on their equity line account with appellee Fifth Third Bank and that the interest per diem was $23.16. The payoff statement stated, in part, as follows: "In order to close an Equity Line account, a written request, signed by our customer must be received with full payments. Without such request, payment will be applied butaccount will not be closed and collateral will not be released."
Thereafter, Express Title Services sent a check in the amount of $77,482.37 to appellee Fifth Third Bank accompanied by a letter (known as the "termination letter") stating that "[i]n the event that the above referenced Mortgage is an equity credit line account, please accept this as authorization to cancel this line of credit, and to accept no further advances on this account." Using the payoff check, appellee Fifth Third Bank then paid the amount owed on the Laymon's equity line account in full. However, since Fifth Third Bank had not received a written request signed by the Laymons to close the equity line account, appellee Fifth Third Bank did not cancel the equity line account.
Appellant Bank of New York subsequently recorded its mortgage on February 10, 1997. Thereafter, the Laymons, after discovering that they could still borrow on their equity loan with appellee Fifth Third Bank, borrowed the maximum amount on such credit line (in excess of $75,000).
Subsequently, a foreclosure action was filed by appellant Bank of New York on February 8, 2000, after the Laymons defaulted on their loan. A Decree of Foreclosure was issued on August 8, 2000, and appellee Fifth Third Bank, on September 14, 2000, filed a motion for an order establishing the priority of liens. Following a hearing held on January 22, 2001, the trial court, as memorialized in a Judgment Entry filed on February 7, 2001, held that appellee Fifth Third's lien was entitled to priority and that the interest of appellant Bank of New York was inferior to appellee Fifth Third Bank's lien.
It is from the trial court's February 7, 2001, Judgment Entry that appellant Bank of New York now prosecutes its appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT AS A MATTER OF LAW ERRED WHEN IT HELD APPELLANT DID NOT HAVE FIRST PRIORITY UNDER R.C. 5301.232.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT AS A MATTER OF LAW ERRED WHEN IT HELD THE EXPRESS TITLE TERMINATION LETTER DID NOT GIVE THE REQUISITE NOTICE PURSUANT TO R. C. 1321.58(F).
 ASSIGNMENT OF ERROR III
 THE COURT AS A MATTER OF LAW ERRED IN HOLDING THAT APPELLANT WAS NOT ENTITLED TO EQUITABLE RELIEF.
 I
Appellant Bank of New York, in its first assignment of error, argues that the trial court erred in holding that appellant did not have first priority under R.C. 5301.232. We disagree.
R.C. 5301.232, the open-ended mortgages statute, states, in relevant part, as follows:
 (B) A mortgage complying with division (A) of this section and securing unpaid balances of loan advances referred to in such division is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made. If such an advance is made after the holder of the mortgage receives written notice of a lien or encumbrance on the mortgaged premises which is subordinate to the lien of the mortgage, and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to such lien or encumbrance . . .
(Emphasis added).
Under R.C. 5301.232(B), an advance made by the holder of an open-end mortgage has priority over other liens unless the mortgagee (1) has written notice of the other liens and (2) is not obligated to make the advance. Colonial Mtge. Serv. Co. v. Southard (1978), 56 Ohio St.2d 347,349.
For a written notice to be valid under R.C. 5301.232(B), it must meet the requirements of R.C. 5301.232(D). Such section states as follows:
 (D) The written notices provided for in division (B) of this section shall be signed by the holder of the lien or encumbrance or the person who has performed or intends to perform work or labor or who has furnished or intends to furnish machinery, material, or fuel, or by his agent or attorney, and shall set forth a description of the real property to which the notice relates, the date, parties to, the volume and initial page of the record or the recorder's file number of the mortgage over which priority is claimed for the lien or encumbrance, and the amount and nature of the claim to which the lien or encumbrance relates or the nature of the work or labor performed or to be performed or machinery, material, or fuel furnished or to be furnished and the amount claimed or to be claimed therefor. The written notices provided for in divisions (B) and (C) of this section shall be deemed to have been received by or served upon the holder of the mortgage when delivered to such holder personally or by registered or certified mail at the address of such holder appearing in the mortgage or an assignment thereof or, if no address is so given, at the principal place of business or residence of such holder or the statutory agent of such holder within this state or, if such holder has no principal place of business or residence or a statutory agent within this state, when posted in some conspicuous place on the mortgaged premises.
In the case sub judice, the trial court found both that appellee Fifth Third Bank had not received the requisite written notice of appellant Bank of New York's lien and that appellee Fifth Third Bank was not obligated to make advances. Since both parties concur that appellee Fifth Third Bank was not obligated to make the advances, the issue for determination is whether appellee Fifth Third Bank received written notice of appellant Bank of New York's mortgage lien.
Upon our review of the record, we concur with the trial court that appellee Fifth Third Bank never received the statutorily required written notice of appellant Bank of New York's lien. As is stated above, Express Title Services, in its termination letter to appellee Fifth Third Bank, stated in pertinent part as follows: "[i]n the event that the above referenced Mortgage is an equity credit line account, please accept this as authorization to cancel this line of credit, and to accept no further advances on this account." Even assuming, arguendo, that Express Title Service was appellant Bank of New York's agent, such letter does not contain any language informing appellee Fifth Third Bank of appellant Bank of New York's mortgage lien. While appellant Bank of New York argues that such letter, "along with the facts and circumstances of the payoff transaction and industry standards provided sufficient notice to Appellee" of its mortgage lien, we disagree. Even if appellee Fifth Third Bank was actually aware, based on the facts of this case, of appellant Bank of New York's subordinate lien, "this type of notice does not replace the required written notice". Leader Mortgage Co. v. Slattery
(July 12, 1996), Lake App. No. 95-L-146, unreported.
Appellant Bank of New York's first assignment of error is, therefore, overruled.
 II
Appellant Bank of New York, in its second assignment of error, contends that the trial court erred in holding that the Express Title Services termination letter did not give the requisite notice pursuant to R.C.1321.58(F).
R.C. 1321.58 authorizes and governs open-end loans. R.C. 1321.58(F) states as follows:
 (F) Whenever there is no unpaid balance in an open-end loan account, the account may be terminated by written notice, by the borrower or the registrant, to the other party. If a registrant has taken a mortgage on real property to secure the open-end loan, the registrant shall deliver, within thirty days following termination of the account, a release of the mortgage to the borrower. If a registrant has taken a security interest in personal property to secure the open-end loan, the registrant shall release the security interest and terminate any financing statement in accordance with section 1309.513 of the Revised Code. (Emphasis added).
The "Equity Line Payoff Statement" that appellee Fifth Third Bank sent to Express Title Services stated, in part, as follows: "In order to close an Equity Line account, a written request, signed by our customer must be received with full payment. Without such request, payment will be applied but account will not be closed and collateral will not be released." The trial court, in its February 7, 2001, Judgment Entry, noted that the Laymons never signed a written notice requesting that appellee Fifth Third Bank terminate their equity line account and that the only correspondence regarding the payoff was the termination letter that Express Title Services sent to appellee Fifth Third Bank.
While appellant Bank of New York does not dispute that the Laymons, as borrowers, never signed a written notice requesting the termination of the equity line account, appellant argues that Express Title Services was the Laymons' agent and that, therefore, the termination letter that Express Title Services sent to appellee complied with R.C. 1321.58(F).
The depository under an escrow agreement, such as Express Title Services, "is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands." Pippin v.Kern-Ward Bldg. Co. (1982), 8 Ohio App.3d 196, 198. As noted by the court in Pippin:
 The depositary may not perform any acts with reference to the handling of the deposit, or its disposal, which are not authorized by the contract of deposit. . . . 20 Ohio Jurisprudence 2d 215, Escrows, Section 8. (Emphasis added.)
 The duty of the escrow agent is therefore clear — to carry out the terms of the agreement as intended by the parties.
Id. at 198. The main function of an escrow agent is to hold documents and funds until the purchase agreement conditions are met whereupon the escrow agent releases the documents and funds. Saad v. Rodriguez (1986),30 Ohio App.3d 156, 158.
In the case sub judice, there is no evidence in the record as to the terms of the escrow agreement under which Express Title Services was a depository. The escrow agreement is not a part of the record in the trial court and, specifically, was never produced at the January 22, 2001, hearing before the trial court. Without a copy of the written escrow agreement, neither the trial court nor this Court can determine whether the parties in this matter intended Express Title Services to act as the Laymons' agent in requesting termination of the equity line account.
Furthermore, assuming arguendo, that such was the case, we concur with the trial court that there is no indication in the record that appellee Fifth Third Bank knew, or had reason to know, that the parties intended for Express Title Services to act as the Laymons' agent in requesting termination of the equity line account. Express Title Services, in its termination letter to appellee Fifth Third Bank, never indicated that it was acting as the Laymons' agent in terminating the equity line account or that the Laymons wanted to close their equity line account. Furthermore, after requesting a payoff statement from appellee Fifth Third Bank, Express Title Services was specifically advised by appellee Fifth Third Bank in the payoff statement that, consistent with R.C.1321.58, a written request signed by the borrowers was required to close the equity line account. Express Title Services, however, never obtained such a written request from the Laymons.
Appellant's second assignment of error is, therefore, overruled.
 III
Appellant Bank of New York, in its third assignment of error, maintains that the trial court erred in holding that it was not entitled to equitable relief. Appellant specifically contends that it was entitled to equitable relief under the doctrines of equitable subrogation, equitable estoppel and unjust enrichment.
As is stated in State v. Jones (1980), 61 Ohio St.2d 99, 102, equitable subrogation "`arises by operation of law when one having a liability or right to a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.'Federal Union Life Ins Co. v. Deitsch (1934), 127 Ohio St. 505, 510." Equitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled. Williams v. Erie Ins. Group (1993), 86 Ohio App.3d 660, 665. The right to equitable subrogation depends upon the facts and circumstances of each case, and the basis for the claim must be readily apparent. Jones, supra, at 102.
We concur with the trial court that appellant Bank of New York's argument that its mortgage lien is entitled to priority over appellee Fifth Third Bank's lien under the theory of equitable subrogation must fail. As the trial court points out, appellant Bank of New York could have protected its priority position by, before loaning $400,000.00 to the Laymons, insisting that it receive a copy of the terminated equity line agreement. See Huntington Nat. Bank v. McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144, unreported. However, appellant Bank of New York failed to do so. As noted by the trial court in its February 7, 2001, Judgment Entry, "[w]hen the secured party does not protect its own interest by ensuring that the first loan is canceled before extending credit, this Court will not invoke equity to compensate for shortcomings easily avoided."
As is stated above, appellant Bank of New York also asserts that it was entitled to equitable relief under the doctrine of equitable estoppel. According to appellant, "[p]rinciples of equitable estoppel apply to require Appellee to release its mortgage or return the payoff funds to Appellant."
"A prima facie case for equitable estoppel requires a plaintiff to prove four elements: (1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) induces actual reliance which is reasonable and in good faith; and (4) which causes detriment to the relying party." Doe v. Blue Cross/Blue Shield of Ohio (1992),79 Ohio App.3d 369, 379. In the case sub judice, there is absolutely no evidence that appellee Fifth Third Bank made any misleading factual misrepresentation to appellant Bank of New York. In fact, appellee Fifth Third Bank, in the payoff statement to Express Title Services, expressly and unambiguously stated that it would not terminate the equity line without a written request from the Laymons'. Furthermore, the payoff statement further stated that "Without such request, payment will be applied but account will not be closed and collateral will not bereleased." This is precisely what happened. When appellee Fifth Third Bank received the check from Express Title Services, it paid off the equity line but did not terminate the Laymons' equity line account.
Finally, appellant Bank of New York asserts that the trial court erred in holding that appellant was not entitled to priority under the theory of unjust enrichment. In order to recover under a theory of unjust enrichment, a plaintiff must prove by a preponderance of the evidence: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit, and (3) for him to retain that benefit under circumstances where it would be unjust for him to retain that benefit without payment. Hambleton v. R.C. Barry Corp. (1984),12 Ohio St.3d 179, 183. We find that the doctrine of unjust enrichment is inapplicable since appellee Fifth Third Bank did not seek to retain anything "under circumstances where it would be unjust for [it] to retain that benefit without payment". In short, as is set forth throughout this Opinion, appellee Fifth Third Bank's lien was legally entitled to priority over appellant's.
Appellant Bank of New York's third assignment of error is, therefore, overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed.
Costs to appellant.
Hon. Julie Edwards, P.J., Hon. W. Scott Gwin, J., Hon. William Hoffman, J., concur.