DECISION
Defendant-appellant, Beaver Plans, Inc. ("Beaver Plans") appeals from a judgment of the Franklin County Court of Common Pleas, which resolved cross-motions for summary judgment in favor of plaintiff-appellee, First Union National Bank ("First Union").
This lawsuit involves a determination of priority between two lenders who hold mortgages on the same property. The undisputed facts are as follows. Michael and Linda Harmon were the owners of real estate located at 2442 Northglen Drive, Columbus. The Harmons granted a $29,000 mortgage to Star Bank on February 3, 1995. The Star Bank mortgage was recorded on February 9, 1995.
On May 20, 1997, the Harmons granted a second mortgage, in the amount of $4,326.24, in favor of Beaver Plans ("Beaver Plans I"). The Beaver Plans I mortgage was recorded on June 25, 1997.
The Harmons refinanced their existing first mortgage on February 19, 1998, granting a mortgage to Mercantile Mortgage Company ("Mercantile") in the amount of $43,200. Chelsea Title Agency of Columbus, Inc. ("Chelsea Title") acted as the closing agent for this transaction. Chelsea Title performed a title search and uncovered the Beaver Plans I mortgage. With the proceeds from the Mercantile transaction, the Harmons extinguished the obligations that were secured by the Star Bank and Beaver Plans I mortgages. The Mercantile mortgage was recorded on March 2, 1998.
A couple weeks prior to the Mercantile transaction, on February 2, 1998, the Harmons had executed another mortgage to Beaver Plans ("Beaver Plans II") in order to finance a home remodeling project. Chelsea Title was apparently unaware of this obligation when it closed the transaction between the Harmons and Mercantile. The Beaver Plans II mortgage was recorded on March 25, 1998, after the remodeling was completed and after the Mercantile transaction had closed.
On April 2, 1998, the Harmons again refinanced their existing first mortgage, granting a mortgage in the amount of $44,424.72 to IMC Mortgage Company ("IMC"). With the proceeds from this transaction, the Harmons extinguished the obligations that were secured by the Mercantile mortgage. Once again, Chelsea Title served as the closing agent. For whatever reason, when a Chelsea Title agent examined the title abstract in advance of the IMC refinancing, the agent did not discover the Beaver Plans II mortgage that had been recorded on March 25, 1998. The IMC mortgage was recorded on April 24, 1998.
The IMC mortgage was assigned to First Union on May 6, 2000. The Harmons defaulted on their obligations to First Union. First Union brought a foreclosure action and obtained a judgment decree.
In their cross-motions for summary judgment, First Union and Beaver Plans each contended that they are entitled to priority with respect to the proceeds from the judicial sale of the Harmons' property. Beaver Plans argued that it has priority, pursuant to R.C. 5301.23, because it recorded its mortgage before IMC (First Union's predecessor) recorded its mortgage. First Union argued that it has priority under the theory of equitable subrogation, as it is entitled to be subrogated to the position of Mercantile, who had priority over Beaver Plans.
The trial court concluded that Beaver Plans accepted its home improvement mortgage from the Harmons on February 2, 1998, with the expectation that its interests would be subordinate to the first mortgage. The Harmons' decision to refinance their first mortgage, the court concluded, did not change the fact that Beaver Plans expected to be the subordinate lender. The trial court applied the doctrine of equitable subordination and entered judgment in First Union's favor.
Appellant now assigns the following errors:
"I. The Trial Court erred in granting the Plaintiff-Appellee's Motion for Partial Summary Judgment.
"II. The trial court erred in overruling the Appellant's Motion for Summary Judgment.
 "III. The Trial Court erred in granting Plaintiff-Appellee subrogation rights for the entire amount of its mortgage."
 Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 We address simultaneously appellant's first and second assignments of error, as they both pertain to the trial court's conclusion that First Union has priority over Beaver Plans based upon the application of the doctrine of equitable subrogation.
 R.C. 5301.23 sets forth the general rule that "the first mortgage recorded shall have preference" over subsequently recorded mortgages. Because Beaver Plans recorded its mortgage on March 25, 1998, it is entitled to statutory priority over First Union, whose predecessor, IMC, recorded its mortgage on April 24, 1998.
 The doctrine of equitable subrogation, however, can defeat the statutory principle of first in time, first in right. "Equitable subrogation arises only by operation of law when one having a liability or right * * * in the property pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor who he has paid." Federal Home Loan Mtge. Corp. v. Moore (Sept. 27, 1990), Franklin App. No. 90AP-546. "Equitable subrogation is essentially a theory of unjust enrichment." Ridge Tool Co. v. Silva (1986), 33 Ohio App.3d 260, 261. " '[E]quity in the granting of relief by subrogation is largely concerned with * * * the prevention of frauds and relief against mistakes, and it is correctly stated that the right to it depends upon the facts and circumstances of each particular case.' " State v. Jones (1980), 61 Ohio St.2d 99, 102. "In order to entitle one to subrogation, his equity must be strong and his case clear." Id.
 Beaver Plans contends that the trial court erroneously concluded that First Union was entitled to be subrogated to the rights of Mercantile, whose first mortgage on the property was recorded on March 2, 1998, three weeks before Beaver Plans recorded its mortgage. Beaver Plans argues that this case is analogous to Jones, in which the Ohio Supreme Court declined to apply the doctrine of equitable subrogation. We disagree.
 The Jones court refused to allow a mortgage lender to gain equitable priority over a tax lien. The court noted that the lender who sought application of the doctrine expressly instructed its title company to delay for three months before recording the mortgage and, during this delay, the Internal Revenue Service recorded its lien. Id. at 103. According to the court, the lender was also aware that its debtor owed "unusual debts" to an accounting firm and to the Internal Revenue Service, but the lender did nothing to inquire further about these obligations. Id. The Jones court concluded that the lender had engaged in "a series of improvident business maneuvers" and that its "own actions led to its dilemma of not obtaining the best priority lien." Id. at 102-103. In the instant action, by contrast, there is no evidence that First Union engaged in any improvident business maneuvers.
 We conclude that the instant action is more similar to Federal Home Loan Mtge. Corp., in which a panel of this court applied the doctrine of equitable subrogation to enable Diamond Savings Loan ("Diamond") to prevail in priority over Fifth Third Bank ("Fifth Third"), even though Fifth Third's mortgage was recorded earlier in time. The Federal Home Loan Mtge. Corp. court noted that "the title insurance company employed by Diamond, mistakenly missed the mortgage from the Moores to Fifth Third during their search on June 18, 1986." Id. As a consequence of this mistake, "Diamond released its previous mortgages on August 5, 1986 pursuant to its refinancing agreement with the Moores, [and] Fifth Third unexpectedly became the holder of a lien recorded first in time." Id. In applying the doctrine in Diamond's favor, the court noted that "Fifth Third did not bargain for or even expect a first lien position and their advancement to first priority caused Fifth Third to receive an unearned windfall." Id.
 In the instant action, as in Federal Home Loan Mtge. Corp., Beaver Plans took its mortgage in February 1998, subject to Mercantile's first mortgage. The Beaver Plans II mortgage lien was at best a second mortgage when Beaver Plans accepted it as a security interest for its home improvement loan to the Harmons. The fact that the Harmons refinanced their home, substituting IMC/First Union for Mercantile, does not change the fact that Beaver Plans expected to be subordinate to another lender. Under these circumstances, the equities in First Union's favor are strong and clear, mandating application of the doctrine of equitable subordination should apply. Accordingly, we overrule appellant's first and second assignments of error.
 By its third assignment of error, appellant contends that the trial court erred by granting priority to First Union for the entire amount of its mortgage. Appellant argues that, under the doctrine of equitable subrogation, First Union is only entitled to take priority for the amount secured by Mercantile's mortgage because First Union's rights are derivative of Mercantile's rights. First Union agrees that "it holds no greater rights than Mercantile Mortgage Company." First Union opposes this assignment of error, however, because it contends that the amount of Mercantile's mortgage is adequate to cover First Union's mortgage.
 We agree with both parties that, under the doctrine of equitable subrogation, First Union is entitled to priority to the extent that Mercantile would have had priority as a first lender. See Federal Union Life Ins. Co. v. Deitsch (1934), 127 Ohio St. 505, 512. We sustain appellant's third assignment of error and remand this matter to the trial court for a determination, consistent with this decision, of the amount to which First Union is entitled to take priority.
 For the foregoing reasons, appellant's first and second assignments of error are overruled, and appellant's third assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings.
Judgment affirmed in part, reversed in part and case remanded.