OPINION
{¶ 1} Plaintiff-appellant, Chase Manhattan Bank, appeals a Clermont County Common Pleas Court's determination that defendant-appellee, North Side Bank and Trust, held the first and best mortgage lien on property subject to a foreclosure action. We affirm the trial court's decision.
 {¶ 2} Mark and Maureen Westin own the property, located at 6333 Devonshire Drive, Loveland, Ohio 45140 (the "Property"), at issue in this case. North Side loaned the Westins $70,000 and $85,000 as small business loans in March 1993 and October 1994 respectively (Loans 1 and 2). These loans were secured by two mortgage liens on the Property and were recorded. In January and October 1996, the Westins obtained two residential mortgage loans from North Side for $115,000 and $45,000 respectively (Loans 3 and 4). Concurrent with the January 1996 loan, North Side subordinated Loans 1 and 2 to Loan 3. Both new mortgage liens were recorded, as was the subordination of Loans 1 and 2.
 {¶ 3} In September 1998, America's Money Line, Inc. obtained a mortgage on the Property from the Westins for $193,500. Money Line assigned the mortgage to Chase Manhattan Bank. Chase's loan paid off Loans 3 and 4 and those corresponding mortgage liens were released. Chase's mortgage lien was recorded.
 {¶ 4} In January 2002, Chase filed a complaint in foreclosure on the Property seeking monetary judgment against the Westins, the marshalling of all liens on the Property and the selling of the Property, with the proceeds distributed in accordance with priority. In its complaint, Chase named North Side as a party.
 {¶ 5} In February 2002, North Side filed an answer, cross-claim and counterclaim requesting judgment against the Westins and alleging that it held the first and best liens on the Property. Chase filed a motion for default judgment against the Westins, which was granted in June 2002. In August 2002, Chase filed a motion to determine priority of the liens. In November 2002, the trial court found that North Side's mortgage liens had priority. Chase appeals the decision raising the following assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT INCORRECTLY APPLIED THE DOCTRINE OF EQUITABLE SUBROGATION TO THE UNDISPUTED FACTS OF THIS CASE AND GRANTED JUDGMENT ON THE PRIORITY OF LIENS TO NORTH SIDE BANK."
 {¶ 7} Chase maintains that the trial court should have applied equitable subrogation to this case, giving its mortgage lien priority over North Side's mortgage liens.
 {¶ 8} R.C. 5301.23 provides that the first mortgage recorded "shall have preference." However, the doctrine of equitable subrogation can defeat this statutory principle of "first in time, first in right."First Union National Bank v. Harmon, Franklin App. No. 02AP-77, 2002-Ohio-4446, at ¶ 17. It is essentially a theory of unjust enrichment. Ridge Tool Company v. Silva (1986), 33 Ohio App.3d 260, 261.
 {¶ 9} Equitable subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." Federal Union Life Ins. Co. v. Deitsch (1934), 127 Ohio St. 505,510. Its purpose is to prevent fraud and to provide relief from mistakes. See State v. Jones (1980), 61 Ohio St.2d 99, 102. Further, to be entitled to equitable subrogation, a party's equity must be strong and his case clear. Id. citing to Harshman v. Harshman (App. 1941), 35 Ohio Law Abs. 633, 636.
 {¶ 10} Chase stated in its motion to determine priority of the mortgage liens that its agent identified all four mortgages. However, according to Chase, its agent assumed the mortgage liens on Loans 1 and 2 would be released or subrogated to any new mortgage lien created by Chase if it paid off Loan 3. The agent mistakenly assumed this because the mortgage liens for Loans 1 and 2 were subrogated to the mortgage lien for Loan 3. The agent believed that Chase would receive the same lien priority position as held by the mortgage lien for Loan 3 by paying off that loan; the agent did not inquire as to the payoffs for Loans 1 and 2. North Side provided the information requested by the agent, the payoffs for Loans 3 and 4. Neither Chase nor its agent confirmed with North Side that it did not intend the mortgage liens for Loans 1 and 2 to have priority over Chase's new loan. As the trial court stated, "[Chase] could have protected its own interests."
 {¶ 11} Chase argues that the purpose of their "mortgage instrument" with the Westins was to give Chase the first and best mortgage lien. However, the "mortgage instrument" did not clearly state that Chase was required to be the first mortgage lienholder as a result of the loan. Moreover, Chase did not take advantage of any of the instrument's provisions to require the Westins to ensure Chase was the first and best lienholder. Chase's argument is without merit.
 {¶ 12} Chase also argues that North Side is not prejudiced by having its Loans 1 and 2 subordinated to Chase's Loan. However, Chase presented no evidence supporting this statement. Further, North Side, who filed its mortgage liens first, would be harmed if equitable subrogation were applied as it would lose its right to priority. See Assoc. FinancialServices Corp. v. Miller, Portage App. No. 2001-P-0046, 2002-Ohio-1610 (holding that where a mortgagee's agent failed to discover a pre-existing mortgage, equitable subrogation would not apply, as the mortgagee was in complete control of the loan process and the holder of the pre-existing mortgage would be harmed by its application).
 {¶ 13} We agree with the trial court's decision that the facts in the case sub judice fall within our disposition in Huntington Nat'l. Bankv. McCallister (Feb. 18, 1997), Butler App. No. CA96-07-144. InHuntington, a creditor, who paid off three mortgage liens, one of which was a credit line, relied upon the incorrect and uninformed assumption that the credit line was terminated upon its payoff. We found that the new creditor was not entitled to advance to the first lienholder position, ahead of the credit line lienholder, as the new creditor could have protected its own interests by ensuring that the credit line was terminated upon its payoff, but did not do so. See, also, Miller, 2002-Ohio-1610.
 {¶ 14} Here, Chase relied upon the "incorrect and uninformed assumption" that North Side would subrogate its mortgage liens to Chase's new mortgage lien. Chase never verified with North Side that Chase would retain priority after paying off Loans 3 and 4. Chase was in complete control of the loan process and therefore could have protected its own interests. The mistake solely rests with Chase.
 {¶ 15} Based on the foregoing analysis, Chase's assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.
 JUDGMENT ENTRY
The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.
It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this judgment entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed in compliance with App.R. 24.