[Cite as *ABN AMRO Mtge. Group v. Kangah*, 126 Ohio St.3d 425, 2010-Ohio-3779.]

**ABN AMRO MORTGAGE GROUP, INC., APPELLEE, *v*. KANGAH ET AL.,**

**APPELLEES; CUYAHOGA COUNTY**

**DEPARTMENT OF DEVELOPMENT, APPELLANT.**

**[Cite as *ABN AMRO Mtge. Group, Inc. v. Kangah*,**

**126 Ohio St.3d 425, 2010-Ohio-3779.]**

*Foreclosure — Equitable subrogation to establish first position — Equities do not favor the party asserting equitable subrogation here — Judgment reversed.*

(No. 2009-0553 — Submitted December 1, 2009 — Decided August 19, 2010.)

CERTIFIED by the Court of Appeals for Cuyahoga County,

No. 91401, 180 Ohio App.3d 689, 2009-Ohio-359.

_____

**PFEIFER, J.**

**{¶ 1}** In this case, appellee ABN AMRO Mortgage Group ("ABN") asserts the doctrine of equitable subrogation to establish its claim to first position in a foreclosure. We conclude that the equities do not favor ABN and that it is in second position, and we reverse the judgment of the court of appeals.

**Factual and Procedural Background**

**{¶ 2}** On July 5, 2000, appellee Jacob Kangah executed two promissory notes that were both secured by a mortgage on his property at 20617 Libby Road, Maple Heights, Ohio. The First Ohio Mortgage Corporation ("First Ohio") held the first mortgage for $68,916, and appellant, Cuyahoga County Department of Development ("CCDOD"), held the second mortgage for $7,500. The mortgages were recorded on July 12, 2000. First Ohio subsequently assigned its mortgage to Countrywide Home Loans, Inc. ("Countrywide").

**{¶ 3}** Nearly a year later, Kangah refinanced his first mortgage through appellee ABN. ABN's mortgage was recorded on June 19, 2001, for $77,000. The ABN loan retired the $69,468.60 mortgage held by Countrywide and also covered $599.05 in outstanding property taxes. The remaining $7,000 was applied to the fees and costs of refinancing. The CCDOD mortgage was not satisfied. Inexplicably, ABN's title examiner did not discover the CCDOD mortgage, and that lien was not extinguished in the refinancing. ABN now asserts that although it had actual knowledge of the mortgage held by Countrywide, it had only constructive knowledge of the mortgage held by CCDOD.

**{¶ 4}** On November 8, 2006, ABN filed for foreclosure on the property. CCDOD filed a cross-claim asserting that it, not ABN, held the first and best mortgage on the property. The trial court granted summary judgment in favor of ABN, concluding that ABN was protected by the doctrine of equitable subrogation. On appeal, the court of appeals affirmed. The court of appeals also granted Kangah's motion to certify a conflict. The appellate court concluded that its decision is consistent with that of the Second District Court of Appeals in *Wash. Mut. Bank, FA v. Aultman*, 172 Ohio App.3d 584, 2007-Ohio-3706, 876 N.E.2d 617, and in conflict with *Alegis Group L.P. v. Lerner*, Delaware App. No. 2004-CAE-05038, 2004-Ohio-6205; *Leppo. Inc. v. Kiefer* (Jan. 31, 2001), Summit App. Nos. 20097 and 20105, 2001 WL 81262; and *Assoc. Fin. Servs. Corp. v. Miller* (Apr. 5, 2002), Portage App. No. 2001-P-0046, 2002 WL 519667.

**{¶ 5}** On review of the order certifying a conflict, we determined that a conflict exists and requested briefing on the following issue:

**{¶ 6}** "Whether the doctrine of equitable subrogation applies when a prior lien is satisfied with loan proceeds and (1) the party asserting the doctrine intended to hold the first and best lien, and (2) the competing lienholder had the expectation that its interest would be junior at the time that it received its interest,

2

where the party asserting the doctrine has no actual knowledge of the competing lien due to its mistake or the mistake of a third party." *ABN AMRO Mtge. Group, Inc. v. Kangah*, 121 Ohio St.3d 1471, 2009-Ohio-2045, 905 N.E.2d 652.

## Law and Analysis

{¶ 7} Mortgages "take effect in the order of their presentation." R.C. 5301.23(A). In this case, the First Ohio mortgage was recorded first and was subsequently assigned to Countrywide. The CCDOD mortgage was recorded next in time, and the ABN mortgage was recorded after that. Because the First Ohio/Countrywide mortgage has been paid off, the CCDOD mortgage is now first in time. Accordingly, in the normal circumstance, that mortgage would have priority over the ABN mortgage in a foreclosure. ABN asserts that this circumstance is not a normal one, and therefore, its status as the first mortgage is protected by the doctrine of equitable subrogation, an exception to the rule set forth in R.C. 5301.23.

### *Equitable Subrogation*

{¶ 8} The doctrine of legal (or equitable)[1] subrogation states: "Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money can not be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released * * *." *Straman v. Rechtine* (1898), 58 Ohio St. 443, 51 N.E. 44, paragraph one of the syllabus.

---

1. Legal and equitable subrogation are identical. See *State v. Jones* (1980), 61 Ohio St.2d 99, 101, 15 O.O.3d 132, 399 N.E.2d 1215.

More recently, we have stated that the doctrine of legal, or equitable, subrogation " 'arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.' " *State v. Jones* (1980), 61 Ohio St.2d 99, 102, 15 O.O.3d 132, 399 N.E.2d 1215, quoting *Fed. Union Life Ins. Co. v. Deitsch* (1934), 127 Ohio St. 505, 510, 189 N.E. 440. Because "[s]ubrogation is an equitable doctrine," *Maryland Cas. Co. v. Gough* (1946), 146 Ohio St. 305, 32 O.O. 365, 65 N.E.2d 858, paragraph two of the syllabus, we will refer to it as "equitable subrogation."

{¶ 9} In *Straman*, William Brunning made a loan secured by a mortgage to pay off a previous mortgage. *Straman*, 58 Ohio St. at 453, 51 N.E. 44. Brunning had been assured that there were no other liens against the property, except a smaller mortgage, which the holder agreed to release so that Brunning's "should be the first and best lien." Id. But previously unknown creditors appeared, asserting prior, and therefore superior, liens. Id. at 453-454. This court concluded that allowing them to assert a superior position would amount to "compelling Mr. Brunning to contribute * * * his own money, without consideration, for the benefit of the general creditors." Id. at 454.

{¶ 10} In *Jones*, the lender had intentionally delayed the filing of its mortgage by approximately three months. *Jones*, 61 Ohio St.2d at 99, 15 O.O.3d 132, 399 N.E.2d 1215. In the meantime, the state of Ohio had filed a lien, which this court held to have priority. Id. at 101. We rejected the lender's assertion of equitable subrogation, relying on the logic of *Ft. Dodge Bldg. & Loan Assn. v. Scott* (1892), 86 Iowa 431, 434-435, 53 N.W. 283: " 'The position of the [lender] is the result of its own negligence. It relied upon an abstract of title which was not brought up to date, and which failed to note the pendency of the [borrower's] action * * *. * * * Surely equity will not reward such negligence by applying the

doctrine of subrogation in favor of the negligent party. To do so would encourage carelessness in taking such securities * * *.' "

{¶ 11} The application of equitable subrogation depends upon the facts and circumstances of each case and is largely concerned with the prevention of frauds and relief against mistakes. *Jones*, 61 Ohio St.2d at 102, 15 O.O.3d 132, 399 N.E.2d 1215, quoting *Canton Morris Plan Bank v. Most* (1932), 44 Ohio App. 180, 184, 184 N.E. 765. Because equitable subrogation is an equitable doctrine, the equity of the party asserting it "must be strong and his case clear." *Jones* at 102, citing *Harshman v. Harshman* (1941), 35 Ohio Law Abs. 633, 636, 42 N.E.2d 447.

{¶ 12} We have considered various factors when balancing the equities in equitable-subrogation cases. In *Jones*, the negligence of the lender was the only significant factor that this court considered. *Jones*, 61 Ohio St.2d at 103, 15 O.O.3d 132, 399 N.E.2d 1215. In *Deitsch*, the court considered the effect of allowing equitable subrogation and concluded that there, equitable subrogation would not worsen the status of the holder of the second mortgage, in part because the holder of the secondary mortgage would have a cause of action against the borrower. *Deitsch*, 127 Ohio St. at 512, 189 N.E. 440. We stated, "No greater burden was placed on the [holder of the secondary mortgage] than she would have borne if the old mortgage * * * had not been released." Id. Similarly, in *Straman*, we emphasized that the general creditors would not be in "a worse condition than they were before Mr. Brunning loaned his money." Id., 58 Ohio St. at 454, 51 N.E. 44. We stated that equitable "subrogation will add no new burdens to the creditors." Id.

*Application of Equitable Principles to This Case*

{¶ 13} The elements of a claim for equitable subrogation are undeniably present. ABN advanced funds to retire a first mortgage, ABN intended to be

secured by a first mortgage, and because of a mistake, the ABN mortgage is currently not first in position. But equitable subrogation is an equitable remedy that is appropriate only when the equities clearly favor the party asserting it. In this case, we conclude that the equities disfavor ABN.

{¶ 14} ABN would not be seeking equitable subrogation but for someone's negligence. That circumstance alone was enough to defeat equitable subrogation in *Jones*, 61 Ohio St.2d at 103, 15 O.O.3d 132, 399 N.E.2d 1215. Whether ABN or the title insurance company it employed was negligent is uncertain. If the title insurance company was negligent, ABN may have a claim against it for its loss, negating its need for equitable subrogation. CCDOD has no claim against ABN or the title insurance company. Furthermore, CCDOD's note with Kangah prohibits it from seeking a judgment against Kangah; ABN's does not.

{¶ 15} Significant here is that under the court of appeals' holding, CCDOD is in a worse position than it would have otherwise been. In July 2000, CCDOD made its loan and was secondary to a mortgage of $68,916. More than six years later, when ABN filed for foreclosure, Kangah owed $71,787.09, plus some accrued interest. Thus, even though Kangah had reduced the balance he owed ABN from $77,000 to $71,787.09, CCDOD's position had not improved, as would have been normal. Rather, its lien was secondary to a larger mortgage than when it lent Kangah the $7,500. This circumstance is due in large part to the substantial costs associated with closing the ABN mortgage.

{¶ 16} We conclude that CCDOD is in a worse position than it would have been if ABN had not extinguished the First Ohio/Countrywide mortgage. Accordingly, the doctrine of equitable subrogation is inapplicable.

**Conclusion**

6

{¶ 17} The judgment of the court of appeals is reversed, and the cause is remanded to the court of common pleas, which should consider the mortgage held by CCDOD first in position.

Judgment reversed

and cause remanded.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Sikora Law, L.L.C., Michael J. Sikora III, Maria Mariano Guthrie, Ann M. Johnson, Anthony R. Modd, Lee R. Schroeder, and Adrienne S. Foster; and Shapiro, Van Ess, Phillips & Barragate, L.L.P., Christian E. Niklas, and Chrysostomos E. Manolis, for appellee ABN AMRO Mortgage Group, Inc.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Kelli Kay Perk, Assistant Prosecuting Attorney, for appellant.

Cavitch, Familio & Durkin Co., L.P.A., Michael C. Cohan, Alexander E. Goetsch, and Max E. Dehn, urging affirmance for amicus curiae, Ohio Land Title Association.

_____