[Cite as *BankUnited v. Klug*, 2013-Ohio-1599.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

BANKUNITED, F.S.B.

    Appellant

    v.

CAREY KLUG, et al.

    Appellees

C.A. No.    11CA010068

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CV162884

DECISION AND JOURNAL ENTRY

Dated: April 22, 2013

MOORE, Presiding Judge.

{¶1}　Plaintiff, BankUnited, as assignee of the FDIC, ("BankUnited"), appeals the ruling of the Lorain County Court of Common Pleas. For the reasons set forth below, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings consistent with this decision.

I.

{¶2}　On January 10, 2005, while unmarried, Carey Klug obtained a $1,000,000 loan from BankUnited, for which he executed a promissory note payable to BankUnited. He secured the note with a mortgage on a property that he owned in Avon Lake, Ohio ("the property"). On September 17, 2005, Mr. Klug married Charleen Chips. On June 23, 2006, while married to Ms. Chips, Mr. Klug refinanced his loan with BankUnited. As part of the refinancing, Mr. Klug executed a note in the amount of $1,050,000 payable to BankUnited, and he secured the note with a new mortgage on the property. The 2006 mortgage states that Mr. Klug was "an

unmarried man[.]" Ms. Chips did not sign, and was not referenced on, any of the above documents.

**{¶3}** In 2009, BankUnited commenced a foreclosure action against Mr. Klug, his "[u]nknown [s]pouse," and the Lorain County Treasurer to foreclose on the 2006 mortgage, to marshal the liens on the property, and to obtain a monetary judgment on the 2006 note. Ms. Chips answered the complaint, setting forth that she had a dower interest in the subject property, which she contended was superior to BankUnited's interest.[1] BankUnited then filed an amended complaint, in which it asserted that its interest in the property was superior to the dower interest claimed by Ms. Chips due to the doctrines of equitable mortgage and equitable subrogation. Ms. Chips answered the amended complaint, denying that BankUnited's interest in the property was superior to her dower interest. Thereafter, BankUnited and Ms. Chips each filed motions for summary judgment. In their motions, each party claimed that there was an absence of material fact as to the priority of their respective interests.

**{¶4}** In a foreclosure entry on August 16, 2011, the trial court denied BankUnited's motion in regard to its equitable claims against Ms. Chips. The trial court granted Ms. Chips' motion for summary judgment against BankUnited on its equitable claims and determined that Ms. Chips had a "one-third dower interest" in the property that was superior to BankUnited's interest in the property. Thereafter, BankUnited filed a "Motion for Clarification or, in the Alternative, Relief from the Final Foreclosure Entry," in which it argued that the trial court

---

[1] Mr. Klug also answered the complaint, and he filed a counter-complaint naming a mortgage broker and another mortgage lender as third-party defendants. BankUnited's claims against Mr. Klug, and Mr. Klug's claims set forth in his counter-complaint are not at issue in this appeal.

incorrectly valued Ms. Chips' dower interest. In a journal entry dated September 12, 2011, the trial court denied BankUnited's motion. On September 15, 2011, BankUnited filed its notice of appeal from the August 16, 2011 foreclosure entry and from the September 12, 2011 order denying its motion, and it now presents two assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING BANKUNITED'S MOTION FOR SUMMARY JUDGMENT AND GRANTING [MS.] CHIPS' MOTION FOR SUMMARY JUDGMENT TO THE EXTENT THAT THE TRIAL COURT HELD THAT [MS.] CHIPS' DOWER INTEREST HAD PRIORITY OVER BANKUNITED'S MORTGAGE.

**{¶5}** In its first assignment of error, BankUnited argues that the trial court erred in denying its motion for summary judgment and granting Ms. Chips' motion for summary judgment on the issue of priority of their respective interests.

**{¶6}** This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶7}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). The moving party must support the motion by pointing to some evidence in the record of the type

listed in Civ.R. 56(C). *Dresher* at 292-93. "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293. If the moving party satisfies its initial burden, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.*

{¶8} Here, the issue in dispute pertains to the priority of a dower interest in relation to the interest of a mortgagee in the context of a foreclosure action. Pursuant to R.C. 2103.02, "A spouse who has not relinquished or been barred from it shall be endowed of an estate for life in one third of the real property of which the consort was seized as an estate of inheritance at any time during the marriage." The dower interest generally continues until the death of the title-bearing spouse, "unless the interest is specifically released. * * * Such a release must be done in writing and recorded." *State ex rel. Miller v. Private Dancer*, 83 Ohio App.3d 27, 30 (10th Dist.1992). In the present case, the parties do not dispute that Ms. Chips held a dower interest in the property, which she did not release in writing.

{¶9} However, pursuant to R.C. 2103.041, dower may be subjected to a judicial sale of the property in order to satisfy the claims of the creditors of the title bearing spouse ("owner"). In such a case, the trial court must order payment in the amount of the value of the dower interest from the proceeds of the sale and determine the dower interest's priority relative to the interests of other creditors against the property. R.C. 2103.041. Even where the date of marriage precedes a creditor's interest in the property, "[t]o the extent that the owner and the owner's spouse are both liable for the indebtedness, the dower interest of the spouse is subordinate to the claims of their common creditors." *See* R.C. 2103.041. Here, it is undisputed that the marriage of Mr. Klug and Ms. Chips predated the 2006 refinancing, to which Ms. Chips was not a party, and thus as to the couple, BankUnited was not a common creditor.

**{¶10}** However, in its amended complaint, BankUnited advanced two equitable theories by which it claimed that its interest in the property was superior to Ms. Chips' dower interest, namely: the doctrines of equitable mortgage and equitable subrogation. In regard to its equitable mortgage claim, BankUnited essentially claimed that the mortgage executed by Mr. Klug operated to impose an equitable lien upon Ms. Chips' dower interest. In *Campbell v. Krupp*, 195 Ohio App.3d 573, 2011-Ohio-2694, ¶ 65 (6th Dist.), the Sixth District explained:

> An equitable lien is a right, not acknowledged in law, to have a fund, or specific property, or its proceeds, applied, in whole or in part to the payment of a particular debt or class of debts. It is merely a charge on property for the purpose of security and is ancillary to and separate from the debt itself. An equitable lien arises from either (1) a written agreement indicating an intent to make a particular property a security for a debt or obligation, or (2) from implication by a court of equity upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings.

(Internal citations and quotations omitted.) In determining whether an equitable lien exists, the court should review the actions of the parties affected by the lien. *See id*.

**{¶11}** In regard to BankUnited's equitable subrogation claim, the Ohio Supreme Court has explained this doctrine as follows:

> Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money can[n]ot be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released * * *.

*ABN AMRO Mtge. Group v. Kangah*, 126 Ohio St.3d 425, 2010-Ohio-3779, ¶ 8, quoting *Straman v. Rechtine*, 58 Ohio St. 443 (1898), paragraph one of the syllabus. "The application of equitable subrogation depends upon the facts and circumstances of each case and is largely concerned with the prevention of frauds and relief against mistakes." *Kangah* at ¶ 11, citing

*State, Dept. of Taxation v. Jones*, 61 Ohio St.2d 99, 102 (1980). Therefore, courts have held that, to prevail on a claim for equitable subrogation, the evidence must demonstrate that the defect in the new mortgage or the oversight as to the other lien(s), was based upon a "mere mistake" or an "inadvertent failure." *HSBC Mtge. Servs., Inc. v. Raschke*, 9th Dist. No. 25140, 2010-Ohio-2997, ¶ 16, citing *Washington Mutual Bank, FA v. Aultman*, 2d Dist. No. 2006 09 25, 2007-Ohio-3706. "Because equitable subrogation is an equitable doctrine, the equity of the party asserting it 'must be strong and his case clear.'" *Kangah* at ¶ 11, quoting *Jones* at 102.

**{¶12}** With the above principles in mind, we will separately review BankUnited's and Ms. Chips' motions for summary judgment on BankUnited's claims for an equitable mortgage and equitable subrogation.

BankUnited's Motion for Summary Judgment

**{¶13}** In its motion for summary judgment, BankUnited argued that no question of material fact existed and it was entitled to judgment as a matter of law on its claims against Ms. Chips. In support, BankUnited provided: the deposition testimony of Mr. Klug, the deposition testimony of Ms. Chips, the affidavit of a Senior Vice President in the Mortgage Division at BankUnited, Eric Darmanin, copies of the 2006 note, mortgage, and settlement statement, which Mr. Darmanin authenticated, and the deposition testimony of Mark Mays, who notarized Mr. Klug's signatures on the 2006 refinancing documents.

**{¶14}** In Mr. Klug's deposition, he averred that he married Ms. Chips on September 17, 2005. Mr. Klug reviewed the 2006 mortgage that he signed. After his name was printed as the "borrower" on the mortgage, Mr. Klug acknowledged that the words "a married man" were covered by typed X's, and the words "an unmarried man" were added thereafter. Mr. Klug acknowledged that he initialed underneath this alteration, and he signed the mortgage. Although

the statement that he was unmarried was incorrect, Mr. Klug averred that he initialed and signed the document at the direction of the mortgage broker, Kennedy Mortgage, and Mark Mays, the notary public who closed the mortgage. Mr. Klug maintained that he did not represent prior to this time that he was unmarried when applying for refinancing. Although he acknowledged that the alteration to the 2006 mortgage was incorrect, he averred that he initialed and signed the altered mortgage because he had relied upon the advice of his mortgage broker, who had told him that the alteration was permissible because the documents pertaining to the 2005 loan listed Mr. Klug as an "unmarried man." Mr. Klug interpreted this to mean that the 2006 documents were merely a continuation of the 2005 loan documents, which were in place when he was unmarried.

{¶15} In Ms. Chips' deposition, she averred that she married Mr. Klug in 2005. She was aware that the property was encumbered by a mortgage when they married. She was also aware that Mr. Klug was exploring options to refinance the home loan in 2006. However, she was uncomfortable with the possibility of subjecting herself to liability on a loan, and, for that reason, she did not take part in the refinancing.

{¶16} In Mr. Darmanin's affidavit, he attested that "[t]he 2006 Mortgage, as prepared, initially stated that [Mr.] Klug was a married man." Mr. Darmanin authenticated a copy of the 2006 mortgage. The mortgage provides that the borrower is Carey Klug. There then appears several typed X's over the language immediately following Mr. Klug's name. These X's are followed by the words, "an unmarried man[.]" The handwritten initials, C.K., appear underneath the X's. Mr. Darmanin averred that "but for [Mr.] Klug's misrepresentation of his marital status, BankUnited would have required [Ms.] Chips signature on the 2006 Mortgage or BankUnited would have refused to close the loan." Mr. Darmanin also authenticated a copy of

the refinancing settlement statement demonstrating that $1,004,152.88 of the 2006 loan was disbursed to pay off the 2005 loan.

{¶17} In his deposition, Mr. Mays averred that he recalled traveling to the property to conduct a closing on a loan. He affirmed that he notarized Mr. Klug's signature on the 2006 mortgage. When reviewing the 2006 mortgage at his deposition, Mr. Mays acknowledged that the 2006 mortgage appeared to be altered from its original form to denominate Mr. Klug as an unmarried man. Although he could not specifically recall the details of the closing documents which Mr. Klug signed, Mr. Mays attested that he did not type X's over the language that existed on the form immediately preceding "an unmarried man," and he did not bring a typewriter with him to the closing. However, Mr. Mays also set forth that, if an alteration appeared to be made to a document by a lender prior to his receiving the document, he would not have required a borrower to write their initials next to such an alteration, as he would only require a borrower to initial changes which were made to a document during the closing.

{¶18} Based upon the foregoing, BankUnited maintained that the 2006 mortgage encumbering Mr. Klug's interest in the property also acted as an equitable lien upon Ms. Chips' interest in the property. However, as set forth above, equitable liens arise from "(1) a written agreement indicating an intent to make a particular property a security for a debt or obligation, or (2) from implication by a court of equity upon consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings," as judged by the actions of the parties affected by the lien. *Krupp* at ¶ 65, quoting *Katz v. Banning*, 84 Ohio App.3d 543, 551 (10th Dist.1992). Here, the parties that would be affected by the imposition of the equitable lien are Ms. Chips and BankUnited, as, if an equitable lien were imposed against Ms. Chips' dower interest, her interest would be subordinate to the interest of BankUnited. BankUnited maintained

that, because her dower interest would have been subordinate to its interest relative to the 2005 loan, imposing an equitable lien on her interest would place Ms. Chips and BankUnited in the same position as the parties would have held had the bank not refinanced the 2005 loan. BankUnited maintained that equity favored this result, because it had relied upon Mr. Klug's false representation of his marital status in closing the 2006 loan. However, BankUnited failed to set forth *any action of Ms. Chips* which would warrant imposing an equitable lien on her interests, as her deposition testimony provided that, although she was aware that Mr. Klug was refinancing the loan in 2006, she took no action in regard to the 2006 loan. She further averred that, if she had been advised that her signature was required on the 2006 mortgage in order to close the 2006 loan, she would have consulted an attorney to determine how signing the mortgage would have affected her interests. Accordingly, BankUnited failed to meet its initial *Dresher* burden of establishing the absence of a question of fact as to its claim for an equitable mortgage on Ms. Chips' dower interest. *See Dresher* at 292-93.

{¶19} In regard to its claim for equitable subrogation, BankUnited argued that, based upon the summary judgment evidence set forth above, there was no question of material fact, and it was entitled to judgment as a matter of law. Mr. Darmanin's affidavit averred that the money from the 2006 loan was used to pay off the 2005 loan, which the parties agree would have had priority over Ms. Chips' dower interest. However, courts have declined to apply the doctrine of equitable subrogation where the loss of the priority of the party seeking to apply the doctrine was due to its own actions. *See Jones* at 101 (declining to apply doctrine of equitable subrogation where lender's loss of priority was due to its own negligence), *Kangah* at ¶ 13 (although elements of equitable subrogation claim were present, equities disfavored application of the doctrine where evidence established that negligence of the lender or its title agency caused loss

of priority), and *Leppo, Inc. v. Kiefer*, 9th Dist. Nos. 20097, 20105, 2001 WL 81262, *2 (Jan. 31, 2001) (application of equitable subrogation inappropriate where party seeking it "was guilty of culpable negligence" or "was in the best position to protect its own interest").

**{¶20}** Based upon the foregoing, a question of material fact existed as to whether BankUnited's loss of priority was due to its own actions. Mr. Darmanin's affidavit set forth that the 2006 mortgage was originally drafted to state that Mr. Klug was a married man. The 2006 mortgage demonstrates that this language was at some point altered to reflect that Mr. Klug was an unmarried man. However, Mr. Mays refuted that the change to the document was made at closing. Viewing this evidence in the light most favorable to Ms. Chips, we cannot discern the circumstances surrounding the alteration to the mortgage. Accordingly, BankUnited failed to meet its initial *Dresher* burden of establishing the absence of a question of fact as to its claim for equitable subrogation. *See Dresher* at 292-93.

**{¶21}** Therefore, based upon the foregoing, to the extent that BankUnited argues that the trial court erred in denying its motion for summary judgment as to its claims for equitable mortgage and equitable subrogation against Ms. Chips, we overrule its first assignment of error.

Ms. Chips' Motion for Summary Judgment

**{¶22}** In Ms. Chips' motion for summary judgment, in regard to BankUnited's claims for equitable mortgage and equitable subrogation, she argued that these doctrines should not be applied because BankUnited could obtain a deficiency judgment against Mr. Klug. However, Ms. Chips pointed to no case law which would support the proposition that having the recourse of obtaining a deficiency judgment precludes a creditor from asserting claims for equitable mortgage and equitable subrogation.

{¶23} Ms. Chips further argued that the doctrines of equitable mortgage and equitable subrogation could not be applied because BankUnited was seeking equitable remedies with "unclean hands." "The 'clean hands doctrine' of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy." *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45 (9th Dist.1991), citing *Bean v. Bean*, 14 Ohio App.3d 358, 363-364.

{¶24} Ms. Chips maintained that there was the absence of a question of fact that "[t]he only reason that [BankUnited] does not have a fee interest in the entire subject property is because [BankUnited] knowingly changed and or permitted the marital status to be changed to 'unmarried' so that it could fund the loan." In support, Ms. Chips pointed to (1) an application that stated that Mr. Klug was married, (2) an unsigned mortgage document that stated that Mr. Klug was married, and (3) the "final" mortgage which "crossed out the original word of 'married' and typed in the word 'unmarried'." Ms. Chips separately supplied the court with exhibits referenced in her motion.

{¶25} In its response to Ms. Chips' motion, BankUnited argued that many of the exhibits that Ms. Chips submitted in support of her motion could not be considered for purposes of summary judgment. However, BankUnited maintained that even if these exhibits were properly before the court, Ms. Chips was not entitled to judgment as a matter of law in regard to its claims for equitable mortgage and equitable subrogation.

{¶26} Assuming without deciding that the exhibits that Ms. Chips submitted in support of her motion were properly before the trial court, we agree with BankUnited to the extent that it argues that the trial court erred in granting Ms. Chips' motion for summary judgment. Ms. Chips

contended that BankUnited, with knowledge that Mr. Klug was married, caused the mortgage to be altered to represent that Mr. Klug was unmarried. The documents that she submitted in support of this contention, when viewed in the light most favorable to BankUnited, do not establish the absence of a question of fact as to BankUnited's knowledge of Mr. Klug's marital status.

**{¶27}** First, the uniform residential loan application that Ms. Chips submitted is signed by Mr. Klug and dated June 23, 2006. On the first page of the application, Mr. Klug's marital status is noted as "[m]arried." The last page of the application states that the name of the "[i]nterviewer" was "Keith Kennedy" of "Kennedy Mortgage Corporation." There is no indication on this form that it was forwarded to BankUnited. Next, on the unsigned mortgage dated June 23, 2006, Mr. Klug is referenced as a married man. However, on the signed mortgage dated June 23, 2006, Mr. Klug is referenced as an unmarried man. Construing these documents in favor of BankUnited, the apparent change in the mortgage documents does not establish that BankUnited altered the mortgage document or that it did so with knowledge that Mr. Klug was married. These are genuine issues of disputed fact. Therefore, Ms. Chips failed to meet her initial *Dresher* burden of establishing the absence of a question of fact that BankUnited's claims were precluded on the basis of the "clean hands" doctrine. *See Dresher* at 292-93.

**{¶28}** We wish to clarify that, although the trial court determined that the doctrines of equitable mortgage and equitable subrogation were not applicable to this case, we cannot conclude that these claims were rendered inapplicable as a matter of law based upon the arguments and evidence that the parties produced in support of, and against each other's respective motions for summary judgment. Therefore, we express no opinion as to whether BankUnited will ultimately be able to establish the applicability of these doctrines.

{¶29} Accordingly, to the extent BankUnited argues that the trial court erred in granting summary judgment to Ms. Chips on its claims for equitable mortgage and equitable subrogation, we sustain its first assignment of error.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING [MS.] CHIPS' MOTION FOR SUMMARY JUDGMENT AND DENYING BANKUNITED'S MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, RELIEF FROM FINAL FORECLOSURE ENTRY, TO THE EXTENT THAT THE TRIAL COURT HELD THAT [MS.] CHIPS WAS ENTITLED TO ONE-THIRD OF THE REMAINING FORECLOSURE SALE PROCEEDS AFTER COSTS OF THIS ACTION AND TAXES WERE PAID.

{¶30} In its second assignment of error, BankUnited argues that the trial court erred in its method of calculating Ms. Chips' dower interest.

{¶31} Our disposition of BankUnited's first assignment of error requires this matter to be remanded for further proceedings on the applicability of BankUnited's claims of equitable mortgage and equitable subrogation, and, if such claims apply, the effect of the claims on Ms. Chips' dower interest. Accordingly, BankUnited's argument as to the valuation of Ms. Chips' dower interest is not yet ripe for review, and we decline to address it.

### III.

{¶32} Accordingly, BankUnited's first assignment of error is sustained in part in and overruled in part. To the extent that the trial court granted Ms. Chips' motion for summary judgment against BankUnited on its claims for equitable mortgage and equitable subrogation, the judgment of the trial court is reversed. To the extent that the trial court denied BankUnited's motion for summary judgment against Ms. Chips on its claims for equitable mortgage and equitable subrogation, the judgment of the trial court is affirmed. Based upon our disposition of BankUnited's first assignment of error, we decline to reach the merits of its second assignment

of error, as it is not yet ripe for review. Judgment is affirmed in part, reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CARLA MOORE
FOR THE COURT

CARR, J.
CONCURS.

BELFANCE, J.
CONCURRING.

{¶33} I concur. With respect to Ms. Chips' motion for summary judgment, I agree that it is appropriate to remand the matter to the trial court because the basis for the trial court's

summary judgment award to Ms. Chips is unclear.  I also agree that a threshold question exists as to whether BankUnited can employ the doctrine of equitable subrogation against Ms. Chips at all given that her interest in the property is an inchoate property interest rather than a lien. BankUnited has not pointed to any legal precedent where equitable subrogation has been applied under the circumstances existing in this case.  However, the trial court should address this question in the first instance.

APPEARANCES:

RUSSELL J. KUTELL and BONNIE L. WOLF, Attorneys at Law, for Appellant.

MELANIE D. BUTLER, Attorney at Law, for Appellant.

FRANCES FITZGERALD ALLINGTON, Attorney at Law, for Appellee.