[Cite as *Elkins v. Colburn*, 2019-Ohio-2681.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| LISA M. ELKINS, | : | |
| Plaintiff-Appellee, | : | Case No.  18CA893 |
| vs. | : | |
| JEFFREY A. COLBURN, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

APPEARANCES:

Clifford N. Bugg, Chillicothe, Ohio for appellant.

Paul F. Price, Waverly, Ohio, for appellee.

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:   6-21-19
ABELE, J.

{¶ 1}    This is an appeal from a Pike County Common Pleas Court judgment entered in favor of Lisa M. Elkins, plaintiff below and appellee herein.  The trial court declared that appellee and Jeffrey A. Colburn, defendant below and appellant herein, entered into an enforceable land contract.   Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANT'S CIVIL RULE 50 MOTION FOR DIRECTED VERDICT."

**{¶ 2}** Appellant and appellee are siblings who lived in apparent harmony on the same parcel of real estate in separate homes, until appellant's girlfriend ran over appellee inside appellant's garage. After that, the parties' relationship deteriorated and appellant sought to evict appellee from the premises.

**{¶ 3}** On July 1, 2015, appellee filed a complaint against appellant and alleged that, in January 2009, she and appellant entered into a land contract with the understanding that appellant would subdivide the real estate. Appellee asserted that appellant failed to fulfill his agreement to subdivide the real estate. Appellee additionally claimed that appellant sought to evict her for failing to obtain insurance, even though the land contract did not require appellee to obtain insurance. She alleged that she met her financial obligations under the land contract.

**{¶ 4}** Appellee thus requested a declaration that the land contract is valid and enforceable and an order to require appellant to record the document with the Pike County Recorder's Office. Appellee attached the purported land contract to her complaint. The contract, dated January 1, 2009, states that appellant agreed to sell "[a] tract of land located at 847 Pennington [R]oad described as 1 ½ acre's [sic] with a 1997 skyline 28x48 doublewide." In exchange, appellee agreed to pay appellant $35,000 at a rate of $261 per month and to pay real estate taxes.

**{¶ 5}** Appellant answered and filed a counterclaim. Appellant alleged that appellee failed to make payments, failed to pay property taxes, failed to maintain insurance, and breached

the contract.  Appellant sought to foreclose on the land contract.  Appellant alternatively sought to quiet title.

{¶ 6}  On October 13, 2016, the court held a trial.  Cathy Stinson testified that in 2009, she notarized the land contract.  She explained that although she did not specifically recall notarizing the land contract at issue, she would have followed her usual procedure.  Stinson indicated that her usual procedure involves identifying the person appearing before her, either through personal knowledge or through appropriate identification.

{¶ 7}  On cross-examination, appellant extensively questioned Stinson's compliance with notarial procedures and whether she actually complied with the correct procedures when notarizing the parties' land contract.  Stinson refused to agree that she failed to comply with the notary requirements.

{¶ 8}  Appellee testified that she has lived on the subject property since 1991.  Appellee explained that her parents previously owned the land and that she obtained title to the land in 2000.  Appellee reported that due to a series of unfortunate circumstances, she declared bankruptcy, and, in November 2008, appellant acquired title to the property.  Appellee stated that around that same time, she and appellant agreed that they would enter into a land contract so that appellee could continue living on the property.  Appellee also identified the parties' land contract and stated that she drafted it based upon a land contract that one of appellant's friends had given him.  Appellee testified that both she and appellant signed it before the notary.

{¶ 9}  Terry Smith testified that he performed a survey of the property.  Smith explained that he first located appellant's five-acre tract of land and reviewed the parties' land contract. Smith observed that the property contained the two homes, a leach field, a septic tank, a

driveway, a power line, and a water meter. He noted that the land contract indicated that the land to be conveyed involved a mobile home that sat upon a one-and-one-half-acre tract. Smith stated that after he examined the property, he prepared an initial plat drawing. Appellee visited his office to review the initial drawing, and Smith called appellant so that he also could see the initial drawing. Appellant did not return Smith's phone call.

{¶ 10} Smith related that appellee later advised him that she did not want part of the land included on the initial plat drawing because appellant used that part of the property for recreational vehicles. Smith explained that appellee also pointed out the area where she used to cut the grass.

{¶ 11} Subsequently, Smith prepared a final survey and indicated that it was based upon "the location of the existing buildings, the occupations of the existing current utilities; such as the septic tank; the leach field; the water meter; the power lines; and the existing gravel driveway."

{¶ 12} After appellee finished presenting her case, she requested the court to amend the pleadings to conform to the evidence. She asserted that the testimony and evidence presented during her case-in-chief showed that the land contract should be reformed to include the property description. Appellant objected, but the trial court allowed appellee to amend her complaint.

{¶ 13} Appellant then requested a directed verdict pursuant to Civ.R. 50.[1] He argued that the court could not grant appellee the relief she requested: to declare that the land contract is valid and enforceable and to order that it be recorded. Appellant also asserted that appellee did

---

[1] As we observe in a later part of this opinion, a Civ.R. 50 directed verdict motion is not the proper procedural tool to invoke during a non-jury trial.

not submit any documentary evidence to show that appellant owns the property.

{¶ 14} Appellee countered that she presented oral testimony to show that appellant owns the property and that she presented sufficient evidence to show that the parties entered into a land contract and intended to be bound by it. Appellee contended that any errors in the contents of the contract could be fixed via reformation.

{¶ 15} The trial court denied appellant's motion. The court disagreed with appellant that appellee was required to submit a deed in order to establish that appellant owns the property.

{¶ 16} Appellant testified and stated that he owns the property. He agreed that he and appellee had discussed appellee buying part of the property. He explained that he "was going to sell her 1 ½ acres with the mobile home."

{¶ 17} Appellant further indicated that he and appellee had prepared a written document. Appellant, however, did not agree that the document appellee presented at trial is the document that he signed. He also denied that the document contained his signature and claimed that both the notary and the appellee lied when they stated that his signature appears on the document.

{¶ 18} Appellant nevertheless agreed that the document contained some of the terms he and appellee had discussed, such as the 1 ½ acres and the mobile home. Appellant disagreed that the document accurately reflected the purchase price. He indicated that he and appellee had agreed that appellee would pay $261 per month until appellant satisfied the mortgage on the property. Appellant additionally agreed that appellee made payments on the land contract.

{¶ 19} Appellant testified that he and appellee also discussed the property lines, but not in great detail. Appellant disputed appellee's evidence concerning the boundary lines and stated that appellee's proposal would deny him road frontage and that he wanted to maintain road

frontage.

{¶ 20} The trial court issued a decision and judgment and found that the parties entered into an enforceable land contract. The court rejected appellant's argument that the document appellee presented at trial does not represent the terms of the contract and that the document is invalid due to the notary's alleged shortcomings. The court specifically found the notary's testimony credible and observed that the notary described the procedure that she follows when notarizing any document. The notary testified that she obtains picture identification of each signatory and that she witnesses the signing of the document. The court additionally recognized the notary's testimony that even though she did not specifically recall notarizing the document at issue, she did recognize her signature and she was certain that she followed the correct procedure when she notarized the document.

{¶ 21} The court also noted that appellant did not produce any other written document that purported to be the parties' agreement. The court thus concluded that the parties entered into a written contract, under which appellant agreed to sell certain property to appellee. The court next considered the terms of the parties' agreement and found that the parties agreed upon a purchase price of $35,000 and that appellant has received $19,283 thus far. The court found that appellee's surveyor's exhibit accurately depicted the real property intended to be conveyed, as well as the location of an easement for ingress and egress and for public utilities.

{¶ 22} The court thus declared the land contract to be a valid and enforceable contract and reformed the land contract to include the surveyor's legal description of the property involved. The court also dismissed the remaining claims and counterclaims. This appeal followed.

I

**{¶ 23}** In his first assignment of error, appellant asserts that the trial court's finding that appellee possessed a valid and enforceable land contract is against the manifest weight of the evidence. Appellant first contends that competent and credible evidence does not support the court's finding that he signed the land contract appellee presented at trial. Specifically, appellant claims that the notary's testimony regarding his acknowledgment appearing on the land contract is not credible. He asserts that the notary did not recall notarizing the document, meeting with the signatories, or asking for and receiving positive identification from each signatory. Appellant further alleges that the notary admitted that the document did not include the date of signing, the county of signing, or other information allegedly needed to establish the validity of the document. Appellant also charges that the notary was not truthful about the date the document was signed.

**{¶ 24}** Appellant also argues that the trial court's decision is against the manifest weight of the evidence. Appellant contends that the parties did not agree to the boundaries of the property that would be conveyed. He further asserts that the trial court's adoption of appellee's property description denies him road frontage and, thus, violates public policy.

**{¶ 25}** As we explain below, we do not agree with appellant that the trial court's judgment is against the manifest weight of the evidence.

A

**{¶ 26}** In general, appellate courts will uphold a trial court's judgment so long as the manifest weight of the evidence supports it. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 63; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461

N.E.2d 1273 (1984); *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."). When an appellate court reviews whether a trial court's decision is against the manifest weight of the evidence, the court """"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact-finder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *."""" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20 (clarifying that the same manifest-weight standard applies in civil and criminal cases), quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A reviewing court may find a trial court's decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983); *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000). Moreover, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. *Eastley* at ¶ 21. As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

*Id.*, quoting Seasons Coal Co., 10 Ohio St.3d at 80, fn. 3, quoting 5 Ohio Jurisprudence 3d,

Appellate Review, Section 60, at 191–192 (1978).

**{¶ 27}** Consequently, "we should not reverse a judgment merely because the record

contains evidence that could reasonably support a different conclusion." *Bugg v. Fancher*, 4th

Dist. Highland No. 06CA12, 2007-Ohio-2019, 2007 WL 1225734, ¶ 9. Instead, as we explained

in *Bugg*:

> It is the trier of fact's role to determine what evidence is the most credible
> and convincing. The fact finder is charged with the duty of choosing between
> two competing versions of events, both of which are plausible and have some
> factual support. Our role is simply to insure the decision is based upon reason
> and fact. We do not second guess a decision that has some basis in these two
> factors, even if we might see matters differently. Rather, we must defer to the
> trier of fact in that situation.

*Id.* at ¶ 9. As such, when there are two fairly reasonable views of the evidence or two

conflicting versions of events, neither of which is unbelievable, we will not choose which one is

more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶ 28}** In the case at bar, we do not believe that the trial court clearly lost its way and

committed such a manifest miscarriage of justice that we must reverse its judgment. Instead, as

we explain below, we believe that the record contains competent and credible evidence to

support the court's judgment that the parties entered into a valid and enforceable land contract

and that the land contract should be reformed to include the property description that appellee

proposed.

B

**{¶ 29}** R.C. 5313.02(A) governs land installment contracts and states:

> Every land installment contract shall be executed in duplicate, and a copy

of the contract shall be provided to the vendor and the vendee.   The contract shall contain at least the following provisions:

(1) The full names and then current mailing addresses of all the parties to the contract;

(2) The date when the contract was signed by each party;

(3) A legal description of the property conveyed;

(4) The contract price of the property conveyed;

(5) Any charges or fees for services that are includable in the contract separate from the contract price;

(6) The amount of the vendee's down payment;

(7) The principal balance owed which is the sum of divisions (A)(4) and (5) less division (A)(6) of this section;

(8) The amount and due date of each installment payment;

(9) The interest rate on the unpaid balance and the method of computing the rate;

(10) A statement of any encumbrances against the property conveyed;

(11) A statement requiring the vendor to deliver a general warranty deed on completion of the contract, or another deed that is available when the vendor is legally unable to deliver a general warranty deed;

(12) A provision that the vendor provide evidence of title in accordance with the prevailing custom in the area in which the property is located;

(13) A provision that, if the vendor defaults on any mortgage on the property, the vendee can pay on that the [sic] mortgage and receive credit on the land installment contract;

(14) A provision that the vendor shall cause a copy of the contract to be recorded;

(15) A requirement that the vendee be responsible for the payment of taxes, assessments, and other charges against the property from the date of the contract, unless agreed to the contrary;

(16) A statement of any pending order of any public agency against the property.

{¶ 30} The purpose of R.C. 5313.02(A) is not to create a "weapon" for the vendor to use in order to invalidate a land contract. *Real Flo Properties v. Kelly*, 6th Dist. Lucas No. L-99-1099, 1999 WL 1203751, *2.   Instead, the purpose of the statute is "to protect the buyer by making specific information available in a land installment contract."   *Id*.

{¶ 31} For this reason, "'it is well-established that a land contract may be held to be enforceable as between parties even though it does not strictly comply with the requirements of

R.C. 5313.02.'" *Phillips v. May*, 11th Dist. Geauga No. 2003-G-2520, 2004-Ohio-5942, 2004 WL 2526409, ¶ 21, quoting *Gollihue v. Russo*, 152 Ohio App.3d 710, 2003–Ohio–2663, 789 N.E.2d 1151, ¶ 33. Instead, a land contract need only substantially comply with the statute in order to be valid and enforceable. *Shimko v. Marks*, 91 Ohio App.3d 458, 461–462, 632 N.E.2d 990 (5th Dist. 1993).

{¶ 32} In *Shimko*, for example, the court determined that a receipt adequately demonstrated that the parties had entered into a land contract. The court noted that although the receipt did not contain each element listed in the statute, the receipt recited the date of execution, the address of the property conveyed, the agreed contract price, the amount of the vendee's down payment, the balance owed, the amount of each installment payment, and the interest rate on the unpaid balance. *Id.* The court thus concluded that the receipt substantially complied with the statute and, as such, adequately demonstrated the existence of a land contract.

{¶ 33} Likewise, in *Real Flo Properties* the court concluded that a land contract is valid when it substantially complied with R.C. 5313.02(A). In that case, the purported contract set forth the date of execution, the address of the property, the total purchase price, the amount of the down payment, the principal still owed, the amount of the installment payment, a statement requiring the vendor to deliver a warranty deed and evidence of title, and a statement regarding tax responsibilities. The court concluded that the above inclusions substantially complied with R.C. 5313.02(A) and showed that the parties had entered into a valid land contract.

{¶ 34} The Eleventh District Court of Appeals determined that a handwritten agreement that complied "with roughly half of" the statutory requirements constituted a valid land contract. *Phillips*, at ¶ 36. In *Phillips*, a handwritten agreement listed the parties' names, the date of

signing, a description of the property, the contract price, the amount and frequency of each installment, and the maximum rate of interest. The agreement did not list the parties' addresses and did not contain a metes and bounds property description. The court nevertheless upheld the agreement as a valid land contract.

{¶ 35} In the case sub judice, although the parties' land contract does not comply with each requirement set forth in R.C. 5313.02(A), the contract substantially complies with the statute. The contract (1) contains the parties' full names, (2) sets forth a date on which the parties signed the contract, (3) lists the contract price, (4) identifies the amount of installments and the due date, (5) states that no encumbrances exist, (6) recites that the vendee will deliver a deed upon completion of the land contract, (7) indicates that the vendor will not provide evidence of title in accordance with local custom, (8) contains provisions regarding the vendor's mortgage default, (9) specifies that the vendee will be responsible for all real estate taxes and assessments, and (10) states that no pending orders exist. The contract, however, does not (1) list the parties' current mailing addresses, (2) contain a legal description of the property conveyed, (3) list any charges or fees, (4) denote the vendee's down payment, (5) specify an interest rate, or (6) state that the vendor will record the contract. The document also does not explicitly identify the principal balance, but the contract price and monthly installments are listed.

{¶ 36} Although the contract does not contain every element set forth in R.C. 5313.02(A), the contract contains many of the identified elements. Importantly, the contract contains the names of the parties, the address and location of the property, the purchase price, and the payment terms. We thus agree with the trial court's conclusion that the contract substantially complies with the statute. Therefore, we do not believe that the trial court

committed a manifest miscarriage of justice by concluding that the land contract is valid and enforceable.

C

{¶ 37} Appellant further asserts that the contract fails to adequately describe the property conveyed. We note, however, that the statute of frauds does not require that real estate "be described with the particularity used in a deed or a formal contract. To so hold would render nugatory the provision of the statute that 'unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith.'" *Sanders v. McNutt* (1947), 147 Ohio St. 408, 410, 72 N.E.2d 72. Rather, to comply with the statute of frauds, the writing "must definitely point out the particular land to be conveyed or must furnish the means of identifying it with certainty." *Schmidt v. Weston*, 150 Ohio St. 293, 82 N.E.2d 284 (1948), paragraph three of the syllabus.

{¶ 38} Additionally, "[p]arol evidence may be resorted to for the purpose of applying the description contained in a writing to a definite piece of property and to ascertain its location on the ground." *Id.* at paragraph two of the syllabus. Parol evidence may not, however, be used to "supply[] deficiencies in a description otherwise so incomplete or incorrect as not to identify the land." Instead, "[t]he description must be in itself capable of application to something definite before parol testimony can be admitted to identify any property as the thing described." *Id.*

{¶ 39} In the case at bar, the contract identified the particular land to be conveyed by referring to the street address, the acreage included, and the home that sat upon the property. Although the contract did not identify the precise boundaries of the property conveyed, appellee introduced parol evidence to ascertain the boundary locations. Appellee introduced testimony

from a surveyor who examined the property and provided the court with a description of the property conveyed. The surveyor's testimony constitutes competent and credible evidence that allowed the court to define the property that the parties intended to convey pursuant to the land contract.

{¶ 40} We also note that the trial court reformed the land contract to more particularly describe the property conveyed. Courts may use reformation to modify a written instrument so that the face of the writing reflects the actual intent of the parties. *Natl. City Real Estate Services LLC v. Frazier*, 2018-Ohio-982, 96 N.E.3d 311 (4ᵗʰ Dist.), ¶ 62; *accord Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 286, 209 N.E.2d 194 (1965). "An action for reformation is not to create an obligation but to establish the content of the instrument as intended by the parties." *Delfino* at 286; s*ee also Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71 (4ᵗʰ Dist.), ¶ 13 ("'The purpose of reformation is not to make a new agreement but to give effect to the one actually made by the parties, which is not accurately reflected in the written agreement'"); *Farmers Mkt. Drive–In Shopping Ctrs., Inc. v. Magana*, 10th Dist. No. 06AP–532, 2007-Ohio-2653, 2007 WL 1560276, ¶ 49 (holding that a court may reform an agreement "'to make the writing conform to the real intention of the parties,'" but it cannot "'make a new contract for those who executed the writing sought to be reformed'"). Thus, in order to reform a written contract, an underlying agreement between the parties must exist. The court then can reform the written contract so that it matches the terms of the underlying agreement. *Faivre v. DEX Corp. Northeast*, 182 Ohio App.3d 563, 2009-Ohio-2660, 913 N.E.2d 1029 (10ᵗʰ Dist.), ¶ 21; *accord Wagner v. Natl. Fire Ins. Co.*, 132 Ohio St. 405, 412, 8 N.E.2d 144, 148, 8 O.O. 216 (1937) ("Reformation is available where it is shown that the

written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them.").

{¶ 41} Moreover, "reformation, at its core, is an equitable remedy. Its application thus 'depends upon the facts and circumstances of each case and is largely concerned with the prevention of frauds and relief against mistakes.'" *Natl. City Real Estate* at ¶ 32, quoting *ABN AMRO Mtge. Group v. Kangah*, 126 Ohio St.3d 425, 2010-Ohio-3779, 934 N.E.2d 924, ¶ 11 (discussing another equitable remedy—equitable subrogation). Accordingly, "whenever a writing fails to conform to [the contracting parties'] intent equity will reform it to make it conform, unless there is some overruling equity." *Hartman v. Tillett*, 86 Ohio App. 20, 24, 89 N.E.2d 613 (1st Dist.1948).

{¶ 42} In the case at bar, we do not believe that the trial court's decision to reform the land contract to conform to the parties' intent is against the manifest weight of the evidence. The evidence shows that the parties intended to convey a one-and-one-half-acre tract of land surrounding appellee's mobile home that sat upon the larger tract of land that appellant owned. It would be unreasonable and inequitable to conclude that the parties intended to convey a tract of land that did not surround appellee's home. The surveyor testified that he chose the boundaries based upon the location of appellee's home, the septic system, the leach field, the driveway, and the exiting utilities. The surveyor explained that he also chose the boundaries based upon the parties' course of conduct that preceded the deterioration of their relationship. The surveyor noted that the parties had shared a driveway to access the public road. He also recorded where appellee had mowed the grass and where appellant used recreational vehicles. The surveyor indicated that all of the foregoing factors helped him to determine where the parties

intended the boundaries lines to be.  The surveyor also accounted for appellant's road access by noting that the parties shared a driveway to access the public road.  We further observe that the surveyor testified that he attempted to contact appellant to ask appellant about the survey, but that appellant did not return the surveyor's phone call.  We thus do not agree with appellant that the trial court's decision to adopt the property description proposed by the surveyor is against the manifest weight of the evidence.

D

{¶ 43} Additionally, we reject appellant's attempt to invalidate the land contract by impugning the notary.  The notary stated that she complied with her normal procedures when notarizing the land contract.  Simply because she could not recall the specifics of notarizing a land contract seven years prior to her testimony does not lead to the conclusion that she lacks credibility.  Even if, however, the notary failed to fulfill her statutory duties, the land contract remains enforceable.  *See generally Natl. City Real Estate Services* at ¶ 61, quoting *Texas Commerce Bank National Association v. Joseph*, 8th Dist. Cuyahoga No. 81097, 2003-Ohio-995, 2003 WL 757015, ¶ 20, quoting *Citizens National Bank v. Denison*, 165 Ohio St. 89, 95, 133 N.E.2d 329 (1956) (stating that "'"[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud"'"); *Seabrooke v. Garcia*, 7 Ohio App.3d 167, 169, 454 N.E.2d 961 (9th Dist.1982) ("The purpose of the acknowledgment statute (R.C. 5301.01) is to provide evidence of execution and authority for recordation.  It is not to provide a way of escape for a party who later wishes to renege on his agreement.").

{¶ 44} Moreover, we again observe that the credibility of witnesses is a matter reserved to the trier of fact.  In the case sub judice, the trial court explicitly found the notary credible,

despite appellant's questioning of the notary's compliance with statutory procedures.

{¶ 45} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶ 46} In his second assignment of error, appellant asserts that the trial court erred by denying his Civ.R. 50 motion for a directed verdict. He contends that appellee failed to offer credible testimony to show that appellant owned the property. Appellant thus claims that appellee could not establish any grounds for relief.

{¶ 47} Appellant further contends that the trial court should have granted his motion based upon appellee's original complaint that requested the court order the land contract recorded. Appellant claims that the court could not have granted appellee the requested relief because the land contract did not adequately describe the property conveyed. Appellant asserts that the court should not have allowed appellee to amend the complaint to add a claim for reforming the land contract.

{¶ 48} We initially observe that appellant's Civ.R. 50(A) motion for a directed verdict is not the proper procedural device to be used in this situation. The case at bar did not involve a jury trial. In a non-jury trial action, the directed verdict standard contained in Civ.R. 50(A) does not apply. *Townsend v. Townsend*, 4th Dist. Lawrence No. 08CA9, 2008-Ohio-6701, 2008 WL 5265677, ¶ 48, citing *Whitestone Co. v. Stittsworth*, 10th Dist. Franklin No. 06AP–371, 2007–Ohio–233, ¶ 11; *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, 878 N.E.2d 66, ¶ 7 (10th Dist.). Instead, Civ.R. 41(B)(2) sets forth the appropriate standard. *Townsend* at ¶ 48. Consequently, we will treat appellant's second assignment of error as one challenging the

trial court's failure to grant a dismissal under Civ.R. 41(B)(2). *See Parrish v. Machlan*, 131 Ohio App.3d 291, 294-295, 722 N.E.2d 529 (1st Dist. 1997).

{¶ 49} A challenge to a decision to deny a Civ.R. 41(B)(2) motion is, in essence, a challenge to the weight of the evidence. Civ.R. 41(B)(2) provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, * * *, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

{¶ 50} When a trial court rules on a Civ.R. 41(B)(2) motion, the court must weigh the evidence, resolve any conflicts, and render judgment in the defendant's favor if the plaintiff has shown no right to relief. *In re P.A.R.*, 4th Dist. Scioto No. 13CA3550, 2014-Ohio-802, 2014 WL 861529, ¶ 14, citing *Ramco Specialties, Inc. v. Pansegrau*, 134 Ohio App.3d 513, 520, 731 N.E.2d 714 (1998); *Scrivner v. Lore*, 4th Dist. Scioto No. 98CA2568 (Apr. 22, 1999) (stating that under Civ.R. 41(B)(2), the trial court does not view the evidence in a light most favorable to the plaintiff but rather actually determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard). A reviewing court will not reverse a trial court's decision regarding a Civ.R. 41(B)(2) motion to dismiss unless the trial court's decision is incorrect as a matter of law or is against the manifest weight of the evidence. *Johnson v. Tansky Sawmill Toyota*, 95 Ohio App.3d 164, 167, 642 N.E.2d 9 (10th Dist. 1994). We again note that an appellate court will not reverse a trial court's decision as being against the manifest weight of the evidence as long as some competent, credible evidence supports it. *E.g., C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 51} In the case at bar, we do not agree with appellant that the trial court erred by failing to grant his motion to dismiss made after appellee finished presenting evidence. Civ.R. 41(B)(2) expressly allows the trial court to "decline to render any judgment until the close of all the evidence." Thus, we cannot determine that the trial court erred in denying appellant's motion at the close of appellee's case and hearing additional evidence. *Hayes v. Carrigan*, 1st Dist. Hamilton No. C-160554, 2017-Ohio-5867, 94 N.E.3d 1091, 2017 WL 3049989, ¶ 22, citing *Tillman v. Watson*, 2d Dist. Champaign No. 06-CA-10, 2007-Ohio-2429, 2007 WL 1454781, ¶ 12–14 (determining that the trial court's initial decision to deny the defendant's motion under Civ.R. 41(B)(2) at the close of the plaintiff's evidence was not erroneous because the rule expressly allows the trial court to proceed with further evidence).

{¶ 52} Furthermore, we do not agree with appellant that appellee failed to present sufficient evidence that appellant owned the five-acre tract of land. Appellee testified that appellant owned the property, as did the surveyor. Appellant has not cited any authority to support his argument that appellee had to produce documentary evidence to establish appellant's ownership of the land. We also note that immediately after he filed his motion to dismiss, appellant testified and admitted that he owned the land.

{¶ 53} We likewise do not agree with appellant that the trial court should have granted his motion due to his assertion that appellee could not prove entitlement to the relief she requested, i.e., that the court order appellant to record the land contract. Appellant premises this argument upon his belief that the trial court could not allow appellee to amend the complaint in order to set forth a claim for reformation of the land contract. He asserts that "[i]t is contrary to our system to have a trial and then to retrofit the complaint so that testimony supports the new

complaint." Appellant's argument, however, overlooks Civ.R. 15(B). Civ.R. 15(B) is entitled, "Amendments to Conform to the Evidence," and states:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

"The rule expresses a liberal policy toward the allowance of amendments" and "'was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Hall v. Bunn*, 11 Ohio St.3d 118, 121, 464 N.E.2d 516 (1984), quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (C.A.10, 1982).

{¶ 54} In the case at bar, the trial court allowed appellee to amend her complaint after she finished presenting her case. Appellant has not raised the trial court's decision to allow appellee to amend the complaint as an assignment of error. Instead, he raises the issue within the context of his assignment of error regarding the trial court's decision to deny his motion to dismiss. Because appellant has not framed the issue as a proper assignment of error, we would be within our authority to disregard the argument. *See* App.R. 12(A)(2) (allowing court to "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App. R. 16(A)"). In any event, trial courts possess broad discretion when ruling on a Civ.R. 15(B) motion. *E.g., McSweeney v. Jackson*, 117 Ohio

App.3d 623, 629–30, 691 N.E.2d 303, 306–07 (4th Dist.1996). Appellate courts thus will not reverse a trial court's decision regarding a Civ.R. 15(B) motion to amend, unless the court abused its discretion. *Spisak v. McDole*, 15 Ohio St.3d 62, 63, 472 N.E.2d 347 (1984) (stating that court will not reverse decision regarding Civ.R. 15(B) motion to amend "in the absence of 'gross abuse'"). The term "abuse of discretion" implies that the court's ruling was "unreasonable, arbitrary, or unconscionable." *E.g., State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Moreover, when applying the abuse of discretion standard, a reviewing court is not free merely to substitute its judgment for that of the trial court. *E.g., In re Jane Doe*, 57 Ohio St.3d 135, 566 N.E.2d 1181 *1* (1991), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990).

{¶ 55} In the case sub judice, we are unable to conclude that the trial court abused its discretion by allowing appellee to amend her complaint to include a claim for reformation. The trial court could have rationally determined that allowing appellee to amend her complaint would allow "'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Hall,* 11 Ohio St.3d at 121, quoting *Hardin*, 691 F.2d at 456. Thus, we disagree with appellant's assertion that the trial court erroneously denied his motion to dismiss based upon appellee's original complaint.

{¶ 56} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.